**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John G. PITZ and David DuPont, Defendants–Appellants.**

Nos. 92–1014, 92–1019.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1993.

Decided Aug. 9, 1993.

Rehearing Denied Sept. 21, 1993.

David E. Risley (argued), Rodger A. Heaton, Asst. U.S. Atty., Office of the U.S. Atty., Springfield, IL, for plaintiff-appellee.

J. Steven Beckett, Beckett & Crewell, Urbana, IL (argued), for David B. DuPont.

Ronald J. Stone, Stratton, Dobbs & Nardulli, Springfield, IL (argued), for John G. Pitz.

Before COFFEY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Defendants David DuPont and John Pitz were charged in a one-count indictment with conspiracy to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). DuPont pled guilty to the charge. DuPont's written plea agreement recognized that the parties disputed the scope of the conspiracy for which the defendant was liable for sentencing purposes. Pitz, the other defendant, was later charged by information with conspiring to distribute 500 or more grams of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B)(ii). Pitz pleaded guilty to the conspiracy charge in the information alleging distribution of 500 or more grams of cocaine in exchange for dismissal of the conspiracy charge alleging distribution of five or more kilograms of cocaine contained in the indictment.

The defendants appeal from the district court's application of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") in arriving at their sentences. Specifically, both defendants allege that the sentencing court clearly erred in (1) calculating the respective drug amounts attributable to each defendant under U.S.S.G. § 2D1.4; (2) concluding that the defendants obstructed justice under U.S.S.G. § 3C1.1; and (3) finding that the defendants were not entitled to a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. In addition, Pitz alleges that the district court clearly erred in denying him a two-level reduction under U.S.S.G. § 3B1.2 for his allegedly minor role in the offense. We affirm.

## I. BACKGROUND

The defendants' cocaine distribution conspiracy originated with the visit of Chicago drug dealer Louis Isirov to an old drug customer in Carbondale, Illinois, during the Fall of 1988. During his visit, Isirov met Bruce Adelmann. Adelmann asked Isirov if he would supply him with cocaine on a consignment basis, and Isirov agreed. Adelmann thus became the initial Southern Illinois source of cocaine to others in the distribution chain, which included fellow college students David DuPont and John Pitz, and David Karr, Michael Rebeck, James Strauser, and Joseph Segobiano, residents of Springfield, Illinois.

Adelmann fronted cocaine to DuPont, who in turn fronted the drug to Karr. Karr testified at the sentencing hearing that he had purchased approximately twenty-five ounces of cocaine from DuPont between May and December of 1988. In late 1988, DuPont fronted Karr four ounces of cocaine on two occasions. In November of 1988, DuPont, his girlfriend, Karr, and Segobiano traveled to Fort Lauderdale, Florida, to attend a soccer game. During their sojourn, Karr renewed his erstwhile romance with DuPont's girlfriend. Shortly thereafter, DuPont and Karr returned to Carbondale and at this time Karr unsuccessfully attempted to buy a quarter pound of cocaine from DuPont. DuPont allegedly refused to conduct the transaction because the deal was alarmingly large and DuPont was upset at Karr's romantic usurpation.

Karr responded to DuPont's rebuff by bypassing DuPont in the distribution chain and began to purchase cocaine directly from Adelmann. Karr testified that he had to buy directly from Adelmann because Adelmann refused to supply cocaine to DuPont due to

an outstanding drug debt. Karr stated that he wrote Adelmann a check for $1,200 to pay DuPont's drug debt and reopen the cocaine supply line. From December of 1988 to November of 1989, Karr purchased approximately seventy ounces of coke from Adelmann. DuPont then began to buy cocaine from Karr. In essence, Karr and DuPont switched places in the distribution chain.

In November of 1989, Karr decided to bypass Adelmann in the distribution chain and began to buy his cocaine directly from Isirov in Chicago. During this same time period, Pitz and DuPont formed a partnership and distributed the cocaine purchased from Karr. Karr testified that he sold Pitz at least twenty-four ounces of cocaine that Pitz in turn distributed to Rebeck and others. Pitz testified that the Pitz–DuPont partnership purchased only four ounces of cocaine from Karr for redistribution to others. Pitz testified that the partnership had received one ounce of cocaine the week prior to Christmas 1989, one ounce the week of Christmas 1989, and two ounces on New Year's Eve of 1989. Two and one-half of the four ounces were distributed to Rebeck, three-fourths of an ounce were sold to others, and the remainder was kept for Pitz's and DuPont's personal use.

After Karr was arrested, his cooperation with law enforcement officials led to Isirov's apprehension during a 1.7 kilogram cocaine transaction, as well as the arrest of Pitz and DuPont. Prior to the defendants' arrests, the conspiracy had distributed some 13.4 kilograms of cocaine. The probation office conducted a presentence investigation and concluded that under the Guidelines DuPont was responsible for distribution of 13.4 kilograms and Pitz was responsible for distribution of twenty-four ounces of cocaine.

The defendants' sentencing hearings were held on November 8, 1991, and December 16, 1991, respectively. Prior to the initial sentencing hearing, defense counsel and the government had filed written objections to DuPont's and Pitz's presentence investigation reports (PSR's). DuPont and Pitz objected to the amounts of drugs individually attributed to each of them in their respective PSR's. DuPont maintained that he was responsible for less than five kilograms and Pitz alleged that he was only responsible for four ounces. Pitz also objected to the probation office's refusal to recommend a two- or four-level reduction for his minor or minimal role in the offense. DuPont asserted that he should receive a two-level reduction for being a minor participant in the conspiracy. The government joined in DuPont's claim that he was a minor participant, and filed an objection stating that DuPont was entitled to a two-level reduction in his offense level pursuant to U.S.S.G. § 3B1.2(b).

The district court agreed with DuPont's and the government's argument that DuPont played a minor role in the offense. The court thus gave DuPont a two-level reduction of his base offense level under U.S.S.G. § 3B1.2(b) for his role as a minor participant in the offense. The court overruled all of the defendants' remaining objections to the PSR's. The district court also found that the defendants had perjured themselves during their sentencing hearings when testifying that they had distributed much smaller quantities of cocaine than was attributed to them in their PSR's. Accordingly, each defendant's base offense level was increased two levels pursuant to U.S.S.G. § 3C1.1 for obstruction of justice. The court adopted the findings of the PSR and determined that based upon Pitz's adjusted offense level of 30 and his criminal history category of I, the Guideline range was 97 to 121 months imprisonment. Cross-referencing DuPont's adjusted offense level of 32 with his criminal history category of II yielded a sentencing range of 135 to 168 months imprisonment. The sentencing court granted the defendants' request that each of them receive the minimum sentence allowable. The court sentenced Pitz to 97 months of confinement, while sentencing DuPont to 135 months imprisonment.

## II. DISCUSSION

### A. Calculation of the Drug Amount

On appeal, Pitz and DuPont argue that the district court erred in calculating the amount of cocaine attributable to them under the Guidelines. The sentencing court deter-

mines the quantity of drugs involved in an offense by a preponderance of evidence. *United States v. Hughes*, 970 F.2d 227, 237 (7th Cir.1992); *United States v. Banks*, 964 F.2d 687, 692 (7th Cir.), *cert. denied*, ——— U.S. ———, 113 S.Ct. 460, 121 L.Ed.2d 377 (1992). We review the sentencing court's factual determination of the amount of drugs involved in a conspiracy for clear error. *United States v. Goines*, 988 F.2d 750, 775 (7th Cir.1993); *United States v. Campbell*, 985 F.2d 341, 346 (7th Cir.1993) (citing *United States v. Cochran*, 955 F.2d 1116, 1124 (7th Cir.), *cert. denied*, ——— U.S. ———, 113 S.Ct. 470, 121 L.Ed.2d 368 (1992)). Each conspirator is responsible for the amount of cocaine he actually distributed as well as the amount involved reasonably foreseeable to him.[1] *Goines*, 988 F.2d at 775; *see also United States v. Tolson*, 988 F.2d 1494, 1502 (7th Cir.1993). We defer to the sentencing court's credibility determinations because the presiding judge while listening to the witnesses' testimony is in the best position to observe, weigh, and evaluate a witness' verbal as well as nonverbal behavior. *Tolson*, 988 F.2d at 1497 (quoting *Churchill v. Waters*, 977 F.2d 1114, 1124 (7th Cir.1992), *cert. denied*, ——— U.S. ———, 113 S.Ct. 2991, 125 L.Ed.2d 686 (1993)).

### 1. Quantity Attributable to Pitz

■ Five witnesses testified as to the quantity of drugs attributable to Pitz at his sentencing hearing: Karr, Randy Mustread, Bruce Harmening, Bob Rutter, and Pitz. Karr testified that he had distributed a total of at least twenty-four ounces of cocaine to Pitz during thirty-five to forty transactions. Karr also testified that Pitz and Rutter had delivered sixty ounces of cocaine from Strauser's apartment to Karr's home. The court determined that Karr was the most credible witness concerning the amount of drugs attributable to Pitz.

Pitz argues that the district court should have relied on his testimony rather than that of Karr. During his sentencing hearing, Pitz denied that he transported sixty kilograms, and alleged that he had only received a total of four ounces from Karr. Pitz also maintains that Rutter, who testified on Pitz's behalf, undermined Karr's testimony concerning the sixty-ounce transport when Rutter stated that he was unable to recall such a delivery. We are forced to disagree with Pitz's interpretation of Rutter's testimony, for he merely testified that he was high on drugs when he drove to Karr's home with Pitz and thus he was unable to recall whether he and Pitz transported sixty ounces of cocaine. Rutter did contradict Pitz's claim that he had distributed only four ounces of cocaine. When asked to describe Pitz's drug dealing, Rutter stated that Pitz had purchased cocaine from Karr in amounts of one-eighth of an ounce to an ounce over the course of a year and further that Pitz supplied four or five of his friends with cocaine during this same period of time. This allegation corroborated Karr's testimony that Pitz's drug dealing activities were not modest and that Karr had supplied him with well over four ounces of cocaine.

Mustread, a cellmate of Pitz's, testified that Pitz had told him that he and DuPont were going to allege that they were only responsible for four ounces of cocaine when they were actually responsible for two kilograms. Deputy Marshall Harmening testified that all of Mustread's other statements as an informant concerning other criminal defendants had proven to be reliable. On cross-examination Pitz elicited concessions from Mustread that he not only had a substantial criminal history, that he had violated jail regulations, and further that he could benefit under Rule 35 for his assistance to the government by testifying about Pitz's incriminating statements. These concessions certainly fall short of precluding the trial court from deeming Mustread a more credible witness than Pitz.

We have frequently held that the trial judge is in the best position to judge the

---

1. Application note 1 to U.S.S.G. § 1B1.3 provides, in pertinent part:

   In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, *the conduct for which the defen-* dant *"would be otherwise accountable"* also *includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the* defendant. (emphasis added).

credibility of witnesses who offer conflicting testimony concerning the quantity of drugs attributable to a defendant for purposes of sentencing. *See United States v. Yanez,* 985 F.2d 371, 378 (7th Cir.1993); *United States v. Villasenor,* 977 F.2d 331, 336 (7th Cir.1992); *United States v. Osborne,* 931 F.2d 1139, 1154 (7th Cir.1991). We are of the opinion that the sentencing court did not commit error in determining that Pitz was responsible for distribution of eighty-four ounces of cocaine.

## 2. Quantity Attributable to DuPont

Five witnesses testified as to the amount of cocaine attributable to DuPont. Karr testified that between May and December of 1988 he purchased approximately twenty-five ounces of cocaine from DuPont. Karr also testified that after he had bypassed DuPont as his drug source, DuPont and Pitz became lower-level distributors in the conspiracy. Karr revealed that on approximately thirty-five to forty occasions from February 1989 to February 1990 he had provided the Pitz–DuPont partnership with at least twenty-four ounces of cocaine.

DuPont disputed Karr's characterization of his extensive and continual involvement in the conspiracy. DuPont testified that in 1988 he had only distributed six to twelve ounces of cocaine to Karr during approximately eight transactions, and that none of his transactions exceeded two ounces. Furthermore, DuPont maintained that he had withdrawn from the conspiracy after Karr became romantically involved with DuPont's girlfriend and attempted to buy a quarter pound of cocaine from DuPont in Carbondale. DuPont alleged that his and Pitz's 1989 cocaine purchases only totaled four ounces, virtually all of which was sold to one customer—Rebeck. DuPont also conceded that he was aware that Pitz made small cocaine purchases from Karr for his personal use. In sum, DuPont alleged that he was only responsible for purchases of but twelve to twenty ounces from his 1988 deals with Karr, and four to six ounces for the 1989 purchases.

Joseph Segobiano, a co-conspirator who assisted Karr in distributing cocaine to the Pitz–DuPont partnership and other customers, contradicted DuPont's allegation that he had never distributed cocaine to Karr in 1988 in amounts greater than two ounces. Segobiano testified that he had accompanied Karr to Carbondale on three occasions to purchase cocaine from DuPont in 1988. Segobiano observed the cocaine being weighed in the first two transactions, and testified that each sale involved four ounces of cocaine. Segobiano did not observe the weighing in the third transaction, but stated that he believed that the third deal also involved four ounces of cocaine. Segobiano further testified that during the term of the Pitz–DuPont partnership, Karr used Pitz as a debt collector for money that Segobiano owed Karr.

Special Agent John Schaefer of the Drug Enforcement Agency testified about a phone conversation that he had with Bruce Adelmann concerning with the quantity of cocaine that Adelmann had made available to DuPont in Carbondale. Adelmann informed Agent Schaefer that he had distributed between fourteen to twenty-three ounces of cocaine to DuPont. Adelmann could only recall the specifics of twelve of those transactions, which totaled sixteen ounces. Adelmann also stated that while he was in jail with DuPont, DuPont attempted to convince him that the amount of cocaine involved in the transactions was less than 500 grams. Had the district court concluded that DuPont was only responsible for less than 500 grams of cocaine, DuPont would have faced a mandatory minimum sentence of five years (60 months) rather than the minimum of 135 months under the Guidelines up to a maximum of 168 months.

Michael Rebeck, who worked at a Springfield health club with DuPont, testified that he had purchased one-eighth ounce quantities of cocaine from DuPont two or three times a month over a period of several months beginning approximately in January of 1990. Rebeck further testified that he had purchased cocaine from DuPont's partner, Pitz, on a few occasions when DuPont was unable to make delivery of the drugs to his house. Rebeck stated that he also bought a quarter ounce of cocaine from Karr on one occasion when Karr visited the health club.

Rebeck's testimony conflicted with Karr's claim that he had sold Rebeck four ounces of cocaine, but Rebeck also disputed DuPont's allegation that he was not purchasing cocaine from Karr through Pitz.

As we noted in *United States v. Edwards,* 945 F.2d 1387, 1399 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992), "[b]efore concluding that a given quantity of drugs was foreseeable for sentencing purposes, the district judge should make clear that he has considered the evidence of the individual defendant's agreement to join a conspiracy of the scope alleged by the government." *See also Tolson,* 988 F.2d at 1502–03; *Goines,* 988 F.2d at 775. The trial court did not commit clear error in finding Karr's version of DuPont's involvement in the conspiracy to be credible. DuPont was indisputably involved in the conspiracy from its inception and remained an active participant throughout its existence.

■ The evidence presented at the sentencing hearing failed to support DuPont's claim that he withdrew from the conspiracy after he and Karr had a disagreement concerning the size of the cocaine transactions. DuPont alleged that he withdrew from the conspiracy in December of 1988 when he objected to the increasing size of Karr's drug purchases and had a dispute with Karr concerning Karr's romance with DuPont's girlfriend. Karr disputed DuPont's characterization of the change in their relationship. Karr testified that DuPont did not withdraw from the conspiracy in December of 1988; rather, DuPont simply changed roles in the criminal organization and bought drugs from Karr instead of selling cocaine to him. In *United States v. Patel,* 879 F.2d 292, 294 (7th Cir.1989), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 494 (1990), we held that one who seeks to withdraw from a conspiracy must take affirmative action to do so by going to the authorities and/or inform his co-conspirators that he is withdrawing and is no longer involved. *See also United States v. Price,* 988 F.2d 712, 722–23 (7th Cir.1993); *United States v. Masters,* 978 F.2d 281, 283 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2333, 124 L.Ed.2d 245 (U.S.1993); *United States v. Bafia,* 949 F.2d 1465, 1477 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992). Mere cessation of activity is insufficient to constitute withdrawal. *Patel,* 879 F.2d at 294. DuPont's allegation that he told Karr in late 1988 that the size of the deals was getting too large was contradicted by Karr. Karr testified that DuPont merely mentioned in December of 1989 that the drug operation that DuPont had set in motion was getting out of control, and greater caution was advisable. We agree with the district court's finding that DuPont did not take the necessary steps required to withdraw and thus never did in fact withdraw from the conspiracy. And furthermore we are of the opinion that the trial court did not clearly err in finding Karr's version of the conversation to be more credible than DuPont's. Advising Karr to proceed with greater caution did nothing to limit DuPont's responsibility for the consequences of the criminal scheme he had begun.

■ We agree with the court's rejection of DuPont's suggestion that his reversal of roles in the conspiratorial hierarchy with Karr in 1989 transformed DuPont from a co-conspirator to a mere buyer. Initially, we are of the opinion that DuPont's failure to withdraw from the drug distribution conspiracy he initiated would preclude such a finding. DuPont and Pitz were obtaining cocaine from Karr in 1989 for resale to Rebeck and others. Karr and Rebeck's testimony established that Karr knew that DuPont and Pitz were purchasing cocaine from him for resale and not for personal consumption. The evidence presented at the sentencing hearing was sufficient to establish that Karr's 1989 cocaine transactions with Pitz and DuPont were a continuation of the distribution conspiracy DuPont joined in 1988. Thus, we agree with the trial court and hold that DuPont was a co-conspirator from the conspiracy's inception to its conclusion. DuPont did not become a mere buyer when he formed the partnership with Pitz. The district court therefore did not err in concluding that the entire 13.4 kilograms distributed by the conspiracy was attributable to Karr.

### 3. Polygraph Evidence

Pitz and DuPont allege that the district court improperly relied on the results of a polygraph examination taken by Karr. Karr on his own initiative requested a polygraph examination after the first sentencing hearing. Karr requested the test in response to the defendants' refutation of Karr's testimony concerning the amount of cocaine he had distributed to DuPont and Pitz, and his testimony concerning Pitz's transportation of sixty ounces of coke to Karr. On appeal, DuPont argues that the trial court abused its discretion in admitting the results of Karr's polygraph test without providing the court first with a copy of the questions that were submitted to Karr for judicial review. Rather, the government filed a pleading entitled "Notice of Polygraph Results" that set forth the qualifications of the polygraph examiner, the examiner's opinion that Karr did not give deceptive answers to questions concerning the size and number of cocaine transactions with Pitz and DuPont, and a statement that a formal report could not be issued until the examiner's supervisor had an opportunity to review the results. It is interesting to note that Pitz did not object to the government's use of the polygraph results, and the issue he raises on appeal was not raised at the trial court level.

■■■ Because defense counsel failed to raise the unavailability of the specific questions presented to Karr as an objection to use of the polygraph results in the district court, the objection is deemed to be waived on appeal unless the admission rises to the level of plain error. *Hollenback v. United States*, 987 F.2d 1272, 1281 (7th Cir.1993). We will find plain error only if the defendants demonstrate that the error resulted in a miscarriage of justice, "that is, in the conviction of an innocent person or the imposition of an erroneous sentence." *United States v. Newman*, 965 F.2d 206, 207 (7th Cir.1992). While conceding that Karr's request for a polygraph test and his favorable

results were one "factor" among many that supported his credibility, the court recognized that polygraph tests are not an entirely reliable indication of veracity. The trial judge also stated that it would not infer from the government's polygraph evidence that Pitz and DuPont were deceitful because they had refused to take a polygraph examination. DuPont's suggestion that the district court regarded the polygraph test as a "crystal ball for truth" is unsupported. Nothing in the record supports the theory that the district court's failure to review the precise questions put to Karr caused the court to impose an erroneous sentence.

### B. Obstruction of Justice Enhancement

■■■ DuPont and Pitz also challenge the district court's two-level enhancement of their base offense levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Section 3C1.1 provides that

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. Application notes 3(b) and (f) specify that the § 3C1.1 enhancement applies to a defendant who commits perjury or provides materially false information to a judge.[2] The commentary defines "material information" as information which, "if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. n. 3. A sentencing court's determination that a defendant obstructed justice is a finding of fact that is reviewable only for clear error. *United States v. Price*, 988 F.2d 712, 721 (7th Cir. 1993). In *United States v. Dunnigan*, —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court held that an enhancement for obstruction of justice is warranted if "[t]he district court's determination ... encompasses all of the factual predicates for a finding of perjury." *Id.* at ——, 113

---

**2.** Application note 3(b) and (f) provide that the § 3C1.1 enhancement applies to the following conduct:

    (b) committing, suborning, or attempting to suborn perjury;

\* \* \* \* \*

    (f) providing materially false information to a judge or magistrate.

U.S.S.G. § 3C1.1, comment. n. 3(b) & (f).

S.Ct. at 1117. A witness testifying under oath commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Id.* at ——, 113 S.Ct. at 1116; *see also United States v. Carter,* 999 F.2d 182, 187 (7th Cir.1993).

■■■ At sentencing, Judge Mills determined that Pitz and DuPont committed perjury when they testified that the amount of cocaine attributable to them was quite limited. The defendants observe that the commentary counsels that "suspect testimony and statements should be evaluated in a light most favorable to the defendant", U.S.S.G. § 3C1.1, comment. 1. The defendants contend that the district court failed to view suspect testimony in their favor.

The testimony that the district court relied on in determining the defendants had perjured themselves was not suspect, however, it was merely contradicted by the defendants' own testimony. Pitz testified that he had purchased only four ounces of cocaine from Karr on three occasions. DuPont alleged that he had only distributed six to twelve ounces of cocaine to Karr, and that he and Pitz had purchased four ounces of cocaine from Karr. Karr testified that DuPont had an uninterrupted membership in the conspiracy, and that DuPont sold approximately twenty-five ounces of cocaine to Karr in 1988 and bought at least twenty-four ounces from Karr after December 1988. Karr further testified that Pitz, as DuPont's partner, distributed the same twenty-four ounces of cocaine and delivered sixty ounces of cocaine from Strauser's apartment to Karr's home. The court specifically found that "DuPont and Pitz have obstructed justice by telling deliberate lies while on the witness stand." The court noted that the discrepancies in the size and number of drug transactions testified to by Karr and the defendants were too large to be attributable to faded memories or confusion but as more the result of selective memory lapses. Some of the witnesses lied while testifying, and the sentencing judge determined from his observations of the witnesses that the defendants were the culpable parties. As additional support for its ruling, the trial court relied upon Mustread's testimony concerning Pitz's scheme to deceive the court as to the drug amounts involved. Furthermore, the court noted that subsequent to Karr's arrest, DuPont attempted to persuade Karr to mischaracterize DuPont's drug debts as gambling debts. We refuse to hold that the district court committed clear error in determining that Pitz and DuPont obstructed justice.

## C. Acceptance of Responsibility

Section 3E1.1 of the Guidelines permits a two-point reduction from a defendant's base offense level "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1. Commentary 3 to section 3E1.1 indicates that the district court correctly ruled that Pitz and DuPont were not entitled to a section 3E1.1 reduction because they had not accepted full responsibility for their offenses despite their guilty pleas. Commentary 3 provides:

> Entry of a plea of guilty prior to the commencement of trial combined with truthful admission of involvement in the offense and related conduct will constitute significant evidence of acceptance of responsibility for the purposes of this section. *However, this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility.*

U.S.S.G. § 3E1.1, comment. 3 (emphasis added). In denying the section 3E1.1 reduction, the sentencing court noted that application note 4 provides that an enhancement for obstruction of justice usually indicates that a defendant has not accepted responsibility.[3] Furthermore, the defendants had denied responsibility for their respective roles in the conspiracy.

---

**3.** Application note 4 provides:

Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply.

U.S.S.G. § 3E1.1, comment. 4.

A defendant bears the burden of demonstrating that he is entitled to the reduction in offense level. *United States v. Skinner*, 986 F.2d 1091, 1100 (7th Cir.1993); *United States v. Leiva*, 959 F.2d 637, 644 (7th Cir.1992) (citing *United States v. Camargo*, 908 F.2d 179, 185 (7th Cir.1990)), *cert. denied*, —— U.S. ——, 113 S.Ct. 2372, 124 L.Ed.2d 277 (1993). We must give due deference to the district court's unique opportunity to more accurately evaluate a defendant's acceptance of responsibility. 18 U.S.C. § 3742(e); *United States v. Franklin*, 902 F.2d 501, 505 (7th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990) (quoting U.S.S.G. § 3E1.1 application note 5). We will reverse a district court's decision concerning acceptance of responsibility only for clear error because " '[t]he question of whether a defendant has accepted responsibility for his crimes is a factual one, depending largely on credibility assessments of the sentencing judge.' " *United States v. Guadagno*, 970 F.2d 214, 224 (7th Cir.1992) (quoting *United States v. McGuire*, 957 F.2d 310, 317 (7th Cir.1992) (citations omitted)); *see also United States v. Price*, 988 F.2d 712, 721 (7th Cir.1993).

Although the defendants pled guilty, they were less than truthful with the court concerning the extent of their involvement in the cocaine conspiracy and distribution scheme. Both Pitz and DuPont deservedly received enhancements for attempting to obstruct justice by committing perjury at their sentencing hearings. Neither defendant demonstrated that he was entitled to an extraordinary two-level reduction for acceptance of responsibility under § 3E1.1 after receiving an enhancement for obstruction of justice under § 3C1.1.

Even if the district court had not imposed the obstruction of justice enhancement, the defendants were not entitled to a two-level reduction for acceptance of responsibility. A reduction for acceptance of responsibility does not automatically apply merely because a defendant pleads guilty. *Skinner*, 986 F.2d at 1100; *United States v. Escobar–Mejia*, 915 F.2d 1152, 1153 (7th Cir. 1990); *Franklin*, 902 F.2d at 505–06, and it applies only when the defendant "fesses up

to his actual offense." *Escobar–Mejia*, 915 F.2d at 1153 (defendant, who pleaded guilty, claimed he was the pawn of others and denied that he was responsible for distribution of more than five kilograms of cocaine, although evidence indicated he had distributed at least seven kilograms). We are in agreement with the trial judge's finding that the defendants refused to accept responsibility for their complete role in the conspiracy. The district court did not commit clear error when it decided not to grant the defendants two-point reductions for acceptance of responsibility.

## D. Minor Participant

Finally, Pitz alleges that the sentencing court erred in denying him a two-level reduction as a minor participant under U.S.S.G. § 3B1.2(b). Pitz argues that assuming the district court was correct in sentencing him in part on delivery of the sixty ounces of cocaine to Karr, the court should have awarded him a two-level reduction for his minor role in this transaction. The government responds by noting that Pitz's focus on this single transaction obscures Pitz's substantial role in other conspiratorial acts. Furthermore, the entrustment of such a substantial amount of cocaine to Pitz in this single transaction suggests that he played more than a minor role in the conspiracy.

Under Guideline § 3B1.2 a district court may reduce a defendant's base offense score by two levels if the defendant is less culpable than most other participants. Application note 3 to § 3B1.2 states that, "[a] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." The trial judge held that Pitz's culpability was equal to that of most of the other conspirators, and that he played an integral role in the conspiracy.

We review the district court's decision on the defendants' challenge for clear error. *Tolson*, 988 F.2d at 1503; *United States v. Cea*, 963 F.2d 1027, 1032 (7th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 281, 121 L.Ed.2d 208 (1992). The evidence presented at Pitz's sentencing hearing established that

Pitz's involvement was too extensive to warrant characterizing him as a minor participant. Pitz's activity in distributing the twenty-four ounces obtained from Karr for the benefit of the Pitz–DuPont partnership required Pitz to pick up the cocaine, deliver it to his customers, collect payment, and reimburse Karr, who had provided the drug on a consignment basis.

Even if Pitz's actions when delivering the sixty ounces of cocaine were the only bases for establishing his culpability, he still would not be entitled to a minor participant status. *See United States v. Osborne,* 931 F.2d 1139, 1158–59 (7th Cir.1991) (defendant's status as a courier does not mean that he is less culpable than other participants in drug operation). "The controlling standard ... is whether [the defendant] was substantially less culpable than the conspiracy's remaining participants...." *Id.* at 1159. Karr testified that Pitz was a loyal member of the conspiracy who he entrusted with knowingly delivering a substantial amount of cocaine. In *Osborne,* we noted that "the courier performs an important conveyance and/or transportation function in a drug conspiracy and is a necessary culpable member who helps insure the success of the overall conspiratorial drug distribution scheme." *Id.* Pitz's delivery of the sixty ounces of cocaine, combined with the several capacities he served in the Pitz–DuPont partnership when distributing twenty-four ounces of cocaine, precluded a two-level reduction under § 3B1.2. Thus, the district court did not commit clear error in refusing to grant a two-level adjustment for "minor participant" status.

### III. CONCLUSION

The defendants' sentences are AFFIRMED.