**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jerome BARKER, Defendant–Appellant.**

No. 93–2765.

United States Court of Appeals,
Seventh Circuit.

Argued April 19, 1994.

Decided June 30, 1994.

**1288**

Andrew B. Baker, Jr., Asst. U.S. Atty. (argued), Philip P. Simon, Asst. U.S. Atty., Office of the U.S. Atty., Dyer, IN, for plaintiff-appellee.

Michael W. Bosch, Bamber, Bosch & Banasiak, Hammond, IN (argued), for defendant-appellant.

Before COFFEY, FLAUM, and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

On October 22, 1992, a grand jury returned an indictment charging Jerome Barker with possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Prior to trial the defendant filed a motion to suppress evidence concerning his arrest for possession of a firearm, arguing that the handgun was seized pursuant to an illegal search (protective sweep), and the court denied the motion. At trial, the defendant renewed the motion to suppress the evidence (handgun) and again the court denied the motion. Subsequently a jury found Barker guilty, and the district judge sentenced the defendant to a term of fifty-seven months' imprisonment, three years of supervised release, and imposed a fine of $7,500 and a special assessment of $50. We affirm.

### FACTS

At trial Special Agent Catherine Newby of the United States Bureau of Alcohol, Tobacco and Firearms testified that in 1991 she was assigned to investigate the drug dealings of David Abrams, the defendant's brother.[1] As part of her investigation, Special Agent Newby purchased drugs on four occasions from Abrams at Barker's and Abrams's residence in Gary, Indiana. Newby testified that the first transaction occurred on February 12, 1991. After knocking on the door, Barker unlocked the door and allowed Newby to

---

1. Abrams is not a party to this appeal and the record does not disclose whether Abrams was convicted for his role in the crimes that are described *infra*.

enter. While Officer Newby purchased $25.00 worth of cocaine from Abrams, Barker sat in a chair nearby, facing the door, and kept one of his hands behind his back, as if to be holding a weapon. However, Agent Newby stated that she did not see a weapon during the first transaction.

Newby testified that the second drug buy occurred on April 4, 1991. After allowing Newby to enter, Barker "seated himself on the couch where he continuously looked out the window, you know, when a car came by, watching out[.]" Abrams made several phone calls in the agent's presence and arranged for a third person to deliver coke to the residence in order that Abrams could sell it to Agent Newby. Newby observed a handgun lying on the couch, and when the third party entered the house, Barker moved the weapon from the couch to a table to give the visitor a seat on the couch. Abrams sold $50.00 worth of cocaine to Newby.

The third transaction occurred on June 20, 1991. Newby testified that when she knocked on the door an unidentified woman answered. Abrams subsequently directed the woman to retrieve the cocaine from another area of the house, and after purchasing the cocaine, Newby departed. The final buy was on June 27, 1991. On this occasion, Abrams directed another woman (unidentified) to secure the cocaine. The woman left the house, returned a short time later, and delivered the drugs to Abrams, who in turn made the $25 sale to Newby.

Special Agent Newby testified that following these four drug buys, she prepared a report and submitted it to the Lake County, Indiana, Prosecutor's Office, which issued a warrant for Abrams's arrest. The arrest warrant was executed on September 9, 1992, by officers from the Lake County, Indiana, Sheriff's Department and the ATF. One of the officers executing the warrant was Henry Woronka. Woronka testified that on September 9, 1992, he and his fellow officers approached the Abrams and Barker house, knocked on the door, and announced they were police officers with a warrant for Abrams's arrest. As Barker opened the door, the officers directed Barker to lie on the floor and ordered Abrams to remain on the couch because Agent Newby had informed them that weapons had previously been on the premises. Based on this knowledge, Officer Woronka upon entering the house initiated a protective sweep to search for weapons and determine whether anyone else was in the house. In fact, Abrams and Barker were in the living room, in addition to an unidentified woman and two children in one of the residence's two bedrooms. As Officer Woronka left the second bedroom, he noticed a holstered .357 Magnum lying on a shelf in plain view. Woronka testified that he seized the loaded weapon, observed that it was loaded, completed the protective sweep, returned to the area where Barker and Abrams were, and handed the weapon over to Special ATF Agent Daniel O'Kelly.

Agent O'Kelly testified that after receiving the gun from Officer Woronka, he inquired of Barker if the second bedroom was his, and the defendant responded in the affirmative. O'Kelly questioned Barker whether the gun was his, and Barker stated it was. Agent Newby testified that she witnessed and heard the interrogation and Barker's responses. Agent O'Kelly then testified that he asked Barker whether Barker had ever been in prison, and Barker replied that he had been in jail for four years. O'Kelly asked him what he had been in prison for, and Barker replied, "armed robbery." Special Agent O'Kelly stated that following this admission, "[I] realized I had probable cause to believe that a felony [under 18 U.S.C. § 922(g)(1) ] had been committed." O'Kelly read Barker his *Miranda* rights and asked the defendant if he understood his rights. O'Kelly testified that Barker replied that he understood his rights. O'Kelly then arrested Barker for being a felon in possession of a firearm (Barker had been convicted of armed robbery on June 9, 1977) and asked Barker where he got the weapon. According to O'Kelly's testimony, Barker shrugged his shoulders and said, "I just got it," and added that he had it for about a year. In addition to the firearm found in Barker's bedroom, the police also discovered "a small caliber semi-automatic pistol" underneath the cushion upon which Abrams was sitting, as well

as "an open camera bag with some ammunition in it."

Prior to trial, Barker filed a motion to suppress the handgun found in his bedroom,[2] arguing that Officer Woronka's illegal search (protective sweep) of his bedroom was invalid under *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), because the police did not have a reasonable belief that the house contained an individual who posed a danger. Initially the district judge noted that "[t]he police conducted the search immediately upon their arrival, and they did nothing more than ensure that no one else was present in the home." The court denied the motion to suppress, finding that "the police had made purchases of cocaine on four different occasions at defendant's home, during which time the police observed weapons and defendant acting in a suspiciously dangerous manner. Therefore, the police were reasonable in believing that defendant's home harbored dangerous persons and weapons on the day they arrived to execute Abrams'[s] arrest."

Following the denial of his pre-trial motion to suppress the handgun found in his bedroom, Barker was tried on the charge of being a felon in possession of a handgun. During trial he renewed his motion to suppress the evidence and once again the court again denied the motion, stating "the same ruling that I issued previously stands." On direct examination, the defendant admitted that he had told Agent O'Kelly that he lived in the bedroom in which the gun was found, but denied telling the agent that the weapon found in his bedroom was his. Barker also denied responding to O'Kelly's question about how long he had owned it, and claimed that Officers O'Kelly and Newby were lying.

On cross-examination, Barker was asked if he had any idea how the gun got in his bedroom. He replied, "No, I don't. Maybe one of the officers brought it, I don't know." In response to the Assistant United States Attorney's inquiry on cross-examination as to whether Barker had ever seen the gun prior to trial, Barker responded, "No[,]" but when asked by the prosecutor whether the gun admitted at trial was the same gun that was found in his bedroom, the defendant changed his story and stated, "Yeah. That's the same gun." The prosecution then asked Barker whether he had ever seen the gun in his bedroom before, and Barker responded, "No." Not surprisingly, the jury disbelieved Barker's contradictory testimony and returned a verdict of guilty.

Barker's pre-sentence report recommended his base offense level be increased two levels under U.S.S.G. § 3C1.1 (obstruction of justice) for perjury. Perjury is a "witness's false testimony concern[ing] a material matter 'designed to substantially affect the outcome of the case ...'." *United States v. Parker*, 25 F.3d 442, 448 (7th Cir.1994) (citing *United States v. Dunnigan*, — U.S. —, —, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993)). At his sentencing hearing, Barker argued that the jury could have found him guilty without disbelieving his testimony, and further that he believed that his demeanor on the stand demonstrated that he was answering the questions honestly. The court noted that

> "[t]he Defendant chose to take the stand and tell a story testifying that he never made the statement regarding ownership of the firearm as testified to by the law enforcement officers.... Based upon this Court's consideration of the location of the firearm in the Defendant's bedroom, the Defendant's testimony, ... in conjunction with the testimony of the two law enforcement officers, the Court concludes that this Defendant lied in his testimony at trial with the purpose of misleading the jury."

Based on the defendant's perjured testimony, the court increased Barker's base offense level two levels (to twenty-two) and with a Criminal History Category of II, determined that Barker faced a range of imprisonment from forty-six to fifty-seven months. The court ordered Barker to serve a term of fifty-seven months' imprisonment, to be followed by three years of supervised release, and imposed a special assessment of $50 and a fine of $7,500.

2. The second handgun, found in Abrams's immediate vicinity, is not at issue in this appeal.

## ISSUES

1) Whether the court's denial of Barker's motion to suppress the handgun found in his bedroom was proper because the protective sweep was valid under *Maryland v. Buie;* 2) whether the court committed error in admitting the handgun despite an alleged lack of chain of custody; and 3) whether the court erroneously increased the defendant's base offense level two levels for perjury.

## DISCUSSION

### I. Admission of Handgun

Barker contends the court erred in denying his motion to suppress the handgun discovered by Officer Woronka during the protective sweep of his bedroom. He contends the denial of his motion to suppress was erroneous under *Buie* because Officer Woronka had no specific and articulable facts reasonably warranting a belief that the area swept held an individual or a weapon posing a danger to the officer or to others, and that therefore the officer should not have engaged in a protective sweep.

The Supreme Court has "expressly recognized that suspects may injure police officers and others by virtue of their access to weapons, even though they may not themselves be harmed." *Michigan v. Long,* 463 U.S. 1032, 1048, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983). "[D]anger may arise from the possible presence of weapons in the area surrounding a suspect." *Id.* at 1049, 103 S.Ct. at 3481. In *Buie,* the Supreme Court stated that a protective sweep was "a quick and limited search of a premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Buie,* 494 U.S. at 327, 110 S.Ct. at 1093. The court held that the Fourth Amendment permits protective sweeps "if the searching officer 'possesse[d] a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]" the officer in believing' that the area swept harbored an individual posing a danger to the officer or others." *Id.* at 327, 110 S.Ct. at

1095 (quoting *Long,* 463 U.S. at 1049–1050, 103 S.Ct. at 3481 and *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)).

▪ "We review the denial of a motion to suppress for clear error." *United States v. Arch,* 7 F.3d 1300, 1302 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1123, 127 L.Ed.2d 431 (1994). "Because the resolution of such a motion is typically fact-dependent, we must 'give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses'." *Id.* (citing *United States v. Edwards,* 898 F.2d 1273, 1276 (7th Cir.1990)).

▪ Contrary to Barker's assertion, Officer Woronka did possess a reasonable belief that the area swept harbored weapons and an individual posing a danger to the officer or others, as demonstrated in the following facts. Agent Newby had purchased cocaine at Abrams's and Barker's residence on four occasions; during the first transaction Barker held his arm behind his back, as if he was holding a weapon, and during the second buy, Barker actually handled the firearm in Special Agent Newby's presence. Moreover, during the second, third, and fourth buys, there were individuals on the premises other than Barker and Abrams. Thus, when serving the arrest warrant, the officers, including Officer Woronka, knew not only that a weapon had been seen inside the home, but also that people other than Barker and Abrams might very well have been within the house. (In fact, three individuals (one woman and two children) were discovered in Abrams's bedroom, as well as a second handgun and ammunition.) Based on Special Agent Newby's experiences inside the house, as communicated to Officer Woronka, we conclude that Woronka possessed specific and articulable facts which taken together with the rational inferences from those facts reasonably warranted the officer in believing that the area "swept" harbored weapons and an individual posing a danger to himself or others. Because the protective sweep was not in contravention of *Buie,* as well as Woronka having had an opportunity to observe Barker's holstered weapon in plain view on the shelf, we

hold that the court's denial of Barker's motion to suppress was not clearly erroneous.

■ Barker also contends that the admission of the weapon at his trial was erroneous because the government had failed to establish a proper chain of custody at trial. "As to a chain of custody for the proper admission of a physical exhibit, there must be a showing that the physical exhibit is in substantially the same condition as when the crime was committed." *United States v. Kelly*, 14 F.3d 1169, 1175 (7th Cir.1994). Barker, however, failed to adequately preserve this argument because when the government moved to admit the handgun at trial, the entirety of Barker's attorney's objection was as follows: "Objection. Foundation." *K–B Trucking Co. v. Riss International Corp.*, 763 F.2d 1148, 1155 n. 8 (10th Cir.1985) ("object[ion] solely on the ground of a lack of foundation" not specific and did not preserve allegation of error on appeal). As we stated in *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir.1988),

> "To preserve an issue for appellate review, a party must make a proper objection at trial that alerts the court and opposing party to the specific grounds for the objections. *United States v. Laughlin*, 772 F.2d 1382, 1391–92 (7th Cir.1985). An objection is proper only if 'a timely objection or motion to strike appears on the record, stating the specific ground of objection, if the specific ground was not apparent from the context. . . .' Fed.R.Evid. 103(a)(1). Neither a general objection to the evidence nor a specific objection on other grounds will preserve the issue for review."

Barker's attorney's objection on the basis of "foundation" was neither specific nor did it apprise the court of which of the many possible foundational defects he believed rendered the evidence inadmissible. Objections to evidence on the basis of foundation may take many forms. For example, proper foundations must be laid to introduce physical exhibits such as business records, public documents, and photographs, hearsay testimony, parol evidence, the opinions of expert witnesses, and the like. In each instance, the foundational requirements necessary for the evidence to be properly received will differ depending on the nature of the proposed evidence. Therefore, an objection based merely on "foundation" is far too general to alert the court to the specific shortcoming that is alleged, much less give the court or opposing counsel an opportunity to rectify the claimed defect. In this case, counsel for Barker did not specify which particular foundational aspect pertaining to the handgun he found lacking, and he certainly did not raise the aspect he now objects to, inadequate chain of custody.

■ Because Barker failed to preserve his objection properly, his only recourse lies in Federal Rule of Criminal Procedure 52(b), which provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To obtain relief under Rule 52(b), "a defendant who has failed to make a timely assertion of a right must meet four requirements in all before he can receive relief under Rule 52(b): that there was an error, that the error was plain, that the plain error affected his substantial rights, and that the plain error that affected his substantial rights *also* seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Davis*, 15 F.3d 1393, 1407 (7th Cir.1994) (citing *United States v. Olano*, — U.S. —, —, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993)).

We are convinced that the court did not commit error in admitting Barker's handgun, for the .357 Magnum handgun presented at trial was positively identified as being the same weapon that was discovered and seized from Barker's bedroom on September 9, 1991, and at trial the gun was in substantially the same condition as when it was found. Initially, we note that Barker himself testified that the gun introduced at trial was the same gun that was in his bedroom. Special Agent O'Kelly testified that he recognized the gun presented at trial as being the one discovered in Barker's room "based on the serial number and the brand and model [of the gun,]" as did Agent Newby, based on the exhibit tag she had previously placed on the weapon. Likewise, Officer Woronka identified the gun as the one he had discovered in Barker's bedroom, and stated at trial the gun

was in substantially the same condition as it was when it was seized. Thus, we have no doubt that the gun introduced at trial was the same gun that was taken into custody following its discovery at Barker's residence, and that it was in substantially the same condition as when the crime occurred. We therefore hold the court did not err in receiving the handgun in evidence.

## II. Perjury

■ Barker contends that the court erred by increasing his base offense level two levels pursuant to U.S.S.G. § 3C1.1 (obstruction of justice). He argues that because he never denied ownership of the gun, the jury could have found him guilty without necessarily finding that he testified falsely under oath concerning a material matter.

Section 3C1.1 provides that

"If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." ·

U.S.S.G. § 3C1.1. In *United States v. Pitz*, 2 F.3d 723 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2141, 128 L.Ed.2d 869 (1994), we noted that

"Application notes 3(b) and (f) specify that the § 3C1.1 enhancement applies to a defendant who commits perjury or provides material false information to a judge. The commentary defines 'material information' as information which, 'if believed, would tend to influence or affect the issue under determination.' U.S.S.G. § 3C1.1, comment. n. 3. A sentencing court's determination that the defendant obstructed justice is a finding of fact that is reviewable only for clear error. *United States v. Price*, 988 F.2d 712, 721 (7th Cir.1993). In *United States v. Dunnigan*, —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), the Supreme Court held that an enhancement for obstruction of justice is warranted if '[t]he district court's determination ... encompasses all of the factual predicates for a finding of perjury.' *Id.* at ——, 113 S.Ct. at 1117. A witness testifying under oath commits perjury if he 'gives false

testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.' *Id.* at ——, 113 S.Ct. at 1116; *see also United States v. Carter*, 999 F.2d 182, 187 (7th Cir.1993). *Id.* [—— U.S.] at ——, 113 S.Ct. at 1117. A witness testifying under oath commits perjury if he 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.' *Id.* at ——, 113 S.Ct. at 1116; *see also United States v. Carter*, 999 F.2d 182, 187 (7th Cir.1993)."

*Pitz*, 2 F.3d at 730–31.

At Barker's sentencing hearing, the district judge stated,

"Based upon this court's consideration of the location of the firearm in the defendant's bedroom, the defendant's trial testimony, ... in conjunction with the testimony of the two law enforcement officers, the court concludes that this defendant lied in his testimony at trial with the purpose of misleading the jury.... and I further believe that this defendant did lie about his statement concerning ownership of the firearm. Therefore, based upon a preponderance of all credible evidence, I find that the defendant committed perjury in his trial testimony, which amounts to a willful obstruction of the administration of justice."

We agree with the district judge that the defendant committed perjury at trial, for Barker gave false testimony under oath concerning a material matter designed to substantially affect the outcome of the case. *Parker*, 25 F.3d at 448. The "material matter" about which Barker gave false testimony was whether he owned the gun (Barker stipulated that he was a felon and it was undisputed that the gun, which was manufactured in Massachusetts, had been transported in interstate commerce). Barker falsely testified that the gun "is not mine" and that he did not "have any idea how that gun got inside" his bedroom, and suggested that the gun was planted in his bedroom. In contrast, Officers O'Kelly, Newby, and Woronka stated that at the time of the arrest, Barker

declared that the gun was his, that the gun presented at trial was the same gun they discovered in the defendant's room in the residence, and that it was in substantially the same condition as the day it was seized (September 9, 1991). The jury believed the officers and disbelieved Barker's tale that the gun was not his. Because the defendant committed perjury, the district judge's two level increase of Barker's base offense for obstruction of justice was proper.

## CONCLUSION

Barker's conviction and sentence are AFFIRMED.