557 S.E.2d 811

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**William JOHNSON, Defendant Below, Appellant.**

No. 28665.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 18, 2001.

Decided Dec. 11, 2001.

---

Darrell V. McGraw, Jr., Attorney General, Heather D. Foster, Assistant Attorney General, Charleston, for Appellee.

Neil R. Bouchillon, Amy C. Crossan, Bouchillon, Crossan, & Colburn, Huntington, for Appellant.

PER CURIAM:

This case is before this Court on an appeal from the Circuit Court of Cabell County. The appellant William Johnson was convicted of five counts of incest and five counts of second degree sexual assault.

Mr. Johnson contends that (1) the trial court erred in admitting the victim's state-

ment when the victim was thought to be unavailable, (2) the trial court erred in admitting evidence of prior bad acts without first conducting a *McGinnis* hearing, (3) the State failed to establish a *prima facie* case to support his conviction for five counts of second degree sexual assault, and (4) the numerous errors prevented him from receiving a fair trial.

Based on a thorough review of the record below, we find no reversible error and affirm the convictions.

## I.

On May 11, 1998, in an 11-count indictment, a Cabell County Grand Jury charged Mr. Johnson with five counts of incest, *W.Va. Code*, 61–8–12 [1994],[1] five counts of second degree sexual assault, *W.Va.Code*, 61–8B–4 [1991],[2] and one count of child abuse resulting in injury, *W.Va.Code*, 61–8D–3(a) [1996][3]. The indictment alleged that between the beginning of October 1997 and the end of January 1998, Mr. Johnson physically and sexually abused his fifteen-year-old stepdaughter,[4] W.B.[5]

In late 1997, W.B. visited her school counselor and made several hypothetical inquires involving physical abuse and the consequences of reporting such abuse. The counselor informed W.B. that by law the counselor would have to alert the authorities if the counselor suspected abuse. In January 1998, W.B. visited the high school counselor again. This time W.B. told the counselor of several incidents of physical and sexual abuse. W.B. alleged that her stepfather physically abused both her and her siblings. Further, she told the counselor that Mr. Johnson had been sexually abusing her for several years. The counselor informed the police, and W.B. gave a written statement to the police detailing the abuse, including allegations of sexual intercourse.

Mr. Johnson was arrested on February 9, 1998, and upon his arrest, he gave a tape-recorded statement to the police. In the statement, Mr. Johnson acknowledged that he had sexual intercourse with his step-daughter less than 10 times beginning in January 1998, but claimed that it was consensual.

On the first day of his trial, despite the issuance of a subpoena, W.B. failed to appear. The State then moved to admit W.B.'s written statement. The trial court made a finding that W.B. was unavailable and that W.B.'s statement was reliable because it was corroborated by Mr. Johnson's tape-recorded statement to the police. Over defense counsel's objections, W.B.'s written statement was introduced into evidence during the State's case-in-chief on the first day of the trial. On the second day of the trial, W.B. appeared and testified in person that her stepfather had forced her to have sex with him.

Before the trial, the State gave notice of its intent to use prior bad act evidence to prove "intent, motive, and *res gestae*." Specifically, the State would offer evidence of alleged incidents of sexual abuse committed by Mr. Johnson against W.B. in Florida at least 2 years earlier than the allegations contained in the indictment.

---

1. *W.Va.Code*, 61–8–12 [1994], provides, in part, that:

    (b) A person is guilty of incest when such person engages in sexual intercourse or sexual intrusion with his or her father, mother, brother, sister, daughter, son, grandfather, grandmother, grandson, granddaughter, nephew, niece, uncle or aunt.

2. *W.Va.Code*, 61–8B–4 [1991], states, in part, that:

    (a) A person is guilty of sexual assault in the second degree when:

    (1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion[.]

3. *W.Va.Code*, 61–8D–3 [1996] provides, in part, that:

    (a) If any parent, guardian or custodian shall abuse a child and by such abuse cause such child bodily injury as such term is defined in section one, [§ 61–8B–1] article eight-b of this chapter, then such parent, guardian or custodian shall be guilty of a felony[.]

4. *W.Va.Code*, 61–8–12(a)(3) [1994] defines "daughter" as "a person's natural daughter, adoptive daughter or the daughter of a person's husband or wife[.]"

5. Consistent with our practice in cases involving sensitive matters, we use the victim's initials.

W.B. first disclosed Mr. Johnson's sexual abuse to the Florida authorities when she was 13. The State of Florida then removed W.B. from her home that she shared with Mr. Johnson. W.B. later withdrew her allegations against Mr. Johnson and she was permitted to return to the home. In Florida, W.B. later accused Mr. Johnson of sexually abusing her two additional times. She recanted each time.

The Florida allegations were first mentioned in the trial during defense counsel's opening statement when defense counsel told the jury that it would later hear that W.B. had made allegations of sexual assault in another state against Mr. Johnson but had later recanted. Evidence of the Florida allegations also came in through all but one of the State's five witnesses.

During the trial, W.B. testified that Mr. Johnson has assaulted her daily, mostly in her room. W.B. said that Mr. Johnson would ask her to "cooperate," meaning have sex with him. If W.B. did not "cooperate," Mr. Johnson would strike her with a fishing pole. W.B. went on to explain that her mother often slept on the couch downstairs and W.B. would often fall asleep in her parents' bed while listening to the radio or watching television.

After a 2–day jury trial, Mr. Johnson was found guilty of each count of incest and each count of second degree sexual assault as charged in the indictment. However, Mr. Johnson was found not guilty of the charge of child abuse resulting in injury. The trial court sentenced Mr. Johnson to 5 to 15 years in prison for each of his five counts of incest,

to be served concurrently. The trial court further sentenced Mr. Johnson to 10 to 20 years for each of his five counts of second degree sexual assault, also to be served concurrently. The trial court ordered the sentences on the incest and sexual assault convictions to run consecutively.

Mr. Johnson asserts four errors that we will now address in turn.

## II.

■ Mr. Johnson first argues that the trial court erred in improperly admitting the written statement of W.B. under the residual hearsay exceptions found in the *West Virginia Rules of Evidence*, Rules 803(24) [6] and 804(b)(5).[7] This Court has recognized that "[a] trial court's evidentiary rulings, as well as its application of the *Rules of Evidence*, are subject to review under an abuse of discretion standard." Syllabus Point 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998).

■ In West Virginia jurisprudence, the general rule is that hearsay testimony is inadmissible. However, there are many exceptions to this general probation on hearsay testimony including Rule 803(24) and Rule 804(b)(5), also known as residual hearsay exceptions. The exceptions carved out by Rule 803(24) and Rule 804(b)(5) are narrow, and the statements offered must normally be so uncontroversial that cross-examination would be of marginal utility. *State v. James Edward S.*, 184 W.Va. 408, 415, 400 S.E.2d 843, 850 (1990). Rules 803(24) and 804(b)(5) "cannot be viewed as an open door to thrust

---

**6.** *West Virginia Rules of Evidence*, Rule 803(24) [2000] provides that:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

We note that Rule 803 was amended effective December 1, 2000, but no changes were made with respect to this particular provision.

**7.** *West Virginia Rules of Evidence*, Rule 804(b)(5) [1994] states, in part, that:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

hearsay statements into a trial." *State v. Smith*, 178 W.Va. 104, 114, 358 S.E.2d 188, 198 (1987). The standard for admitting evidence under Rule 803(24) and Rule 804(b)(5) is set out in *State v. Smith*.

> The language of Rule 804(b)(5) of the West Virginia Rules of Evidence and its counterpart in Rule 803(24) requires that five general factors must be met in order for hearsay evidence to be admissible under the rules. First and most important is the trustworthiness of the statement, which must be equivalent to the trustworthiness underlying the specific exceptions to the hearsay rule. Second, the statement must be offered to prove a material fact. Third, the statement must be shown to be more probative on the issue for which it is offered than any other evidence the proponent can reasonably procure. Fourth, admission of the statement must comport with the general purpose of the rules of evidence and the interest of justice. Fifth, adequate notice of the statement must be afforded the other party to provide that party a fair opportunity to meet the evidence.

Syllabus Point 5, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987).

Trustworthiness is the linchpin of admissibility. The moving party must make a showing of why this particular hearsay statement, unlike most out-of-court statements, is trustworthy and therefore admissible. Reliability must be shown from the circumstances surrounding the making of the statement. "[A] 'particularized guarantee of trustworthiness' must come from the 'totality of the circumstances,' but these circumstances 'include only those that surround the making of the statement and that render the declarant particularly worthy of belief.'" *James Edward S.*, 184 W.Va. at 414–15, 400 S.E.2d at 849–50 (1990) (*quoting Idaho v. Wright*, 497 U.S.

805, 819, 110 S.Ct. 3139, 3148, 111 L.Ed.2d 638, 655–66 (1990)).

In the instant case, when W.B. failed to appear as a state's witness on the first day of trial, the trial court admitted into evidence her written statement made to the police, finding the statement to be reliable because Mr. Johnson's own statement to the police corroborated it "in some way."

We do not find it necessary to determine whether the admission of W.B.'s statement into evidence was error. Mr. Johnson was not limited or inhibited in any manner in conducting cross-examination of the victim because she became available and did testify during the second day of the trial. Therefore, Mr. Johnson suffered no prejudice.

Next, we look at whether the lower court abused its discretion by admitting prior physical and sexual allegations made by W.B. against Mr. Johnson without first conducting an *in camera* hearing as required under *McGinnis* and its progeny.

■ Because of the potential for unfair prejudice that is inherent in "prior bad acts" evidence, the trial court must carefully scrutinize proffered Rule 404(b) evidence before allowing the jury to hear the evidence.[8] Syllabus Point 16, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974) states that:

> [i]n the exercise of discretion to admit or exclude evidence of collateral crimes and charges, the overriding considerations for the trial court are to scrupulously protect the accused in his right to a fair trial while adequately preserving the right of the State to prove evidence which is relevant and legally connected with the charge for which the accused is being tried.

The following standard is used when trial courts are deciding whether to admit Rule 404(b) evidence:

> Where an offer of evidence is made under Rule 404(b) of the West Virginia Rules of

---

**8.** *West Virginia Rules of Evidence*, Rule 404(b) [1994] states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

Syllabus Point 2, *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994).

Applying the foregoing standards, we review the trial court's actions. The trial court admitted the prior bad act evidence without holding an *in camera* hearing. Evidence of the Florida acts came in through all but one of the State's witnesses and defense counsel mentioned the Florida acts during his opening statements. There were numerous mentions of the Florida incidents to which defense counsel did not object. Defense counsel suggested that they had intended to use the evidence to attack the victim's credibility. A limiting jury instruction was offered by the State and given by the court. Also, a limiting instruction was

given by the trial court at the close of the State's case-in-chief.

While troubled by the trial court's failure to conduct an *in camera* hearing as required by *McGinnis,* this Court has a difficult time finding reversible error where the defendant's counsel failed to object to the introduction of the prior bad acts evidence.[9]

Perhaps anticipating that this Court would be reluctant to find reversible error on the basis of defense counsel's failure to request an *in camera* hearing, Mr. Johnson further asserts that plain error was committed when defense counsel failed to object to the introduction of the prior bad act evidence. *See West Virginia Rules of Criminal Procedure,* Rule 52(b) [1981].

■ In *State v. Miller,* this court held that "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus Point 7, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

■ In Syllabus Point 8 of *Miller,* this Court then went on to explain the difference between "waiver" and "forfeiture" "[u]nder the 'plain error' doctrine, 'waiver' of error must be distinguished from 'forfeiture' of a right. A deviation from a rule of law is error unless there is a waiver. When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined. By contrast, mere forfeiture of a right—the failure to make timely assertion of the right—does not extinguish the error. In such a circumstance, it is necessary to continue the inquiry and to determine whether the error is 'plain.' To be 'plain,' the error must be 'clear' or 'obvious.'" Syllabus Point 8, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

Based on the record below, it is unclear whether there was a waiver or a forfeiture of the right to an *in camera* hearing. This

---

**9.** This Court finds equally troubling defense counsel's failure to request a Rule 404(b) hearing as required under *McGinnis.*

issue is best saved for further factual development in a *habeas corpus* proceeding because it is intertwined with trial counsel's performance. We therefore do not provide Mr. Johnson the benefits of the plain error doctrine on this appeal.

■ Next, we turn to Mr. Johnson's assertion that there was insufficient evidence to support the five individual counts of second degree sexual assault, specifically, that there was no forcible compulsion, in that W.B. was 16 years of age and the sexual relationship between himself and W.B. was consensual. W.B. became 16 years of age on November 17, 1997.

■ Recently, this Court clarified the appellate standard of review where a criminal defendant challenges the sufficiency of the evidence supporting her conviction:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syllabus Point 1, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

■ This Court went on to explain the difficult burden a defendant bears when challenging a conviction on the sufficiency of the evidence.

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for

a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syllabus Point 3, *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995).

Mr. Johnson argues that the State did not meet the forcible compulsion component of a second degree sexual assault charge. *W.Va. Code,* 61–8B–4(a) [1991], in pertinent part, states that:

> A person is guilty of sexual assault in the second degree when:
>
> (1) Such [a] person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion[.]

As it applies to second degree sexual assault, "forcible compulsion" means:

> (a) Physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or
>
> (b) Threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or herself or another person or in fear that he or she or another person will be kidnaped; or
>
> (c) Fear by a person under sixteen years of age caused by intimidation, expressed or implied, by another person who is at least four years older than the victim.

*W.Va. Code,* 61–8B–1(1) [1996].

Both W.B. and her mother testified that there was an abundance of physical abuse in the household, and that Mr. Johnson beat not only W.B., but W.B.'s mother and W.B.'s siblings. W.B. testified that she "acquiesced" to her stepfather's demands for sexual intercourse because in the past she and her siblings had been punished more harshly when she refused to have sexual intercourse with him. Both W.B. and her mother testified that Mr. Johnson primarily used a fishing pole in the beatings.

W.B.'s mother denied knowledge of sexual intercourse between W.B. and Mr. Johnson, but admitted that Mr. Johnson was oddly possessive of W.B. and that W.B. and Mr. Johnson often slept in the same bed. Further, W.B. testified that Mr. Johnson forced her to have sexual intercourse with him on an almost daily basis between the beginning of October 1997 and the end of January 1998.

During his testimony, Mr. Johnson denied sexually or physically abusing W.B. However, the jury heard Mr. Johnson's taped statement given to the police shortly after he was arrested, in that statement Mr. Johnson admits to having sexual intercourse with W.B., claiming that it was consensual. In his taped statement, Mr. Johnson also admits to "disciplining" the children with a fishing pole. Reviewing the evidence in the light most favorable to the prosecution, this Court finds that there was sufficient evidence to uphold the conviction of five counts of second degree sexual assault.

██ Finally, Mr. Johnson raises the specter of cumulative error. Cumulative error occurs "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syllabus Point 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972). Looking at the record as a whole, we do not find cumulative error.

### III.

For the reasons stated, the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.