# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent,**

**vs.)  No. 19-0631** (Jefferson County CC-19-2017-F-153)

**Michael W.,**
**Defendant Below, Petitioner**

**FILED**
**December 7, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael W., by counsel Justin Collin, appeals his convictions on two counts of second-degree sexual assault and one count of first-degree sexual abuse.[1]  Respondent State of West Virginia, by counsel Mary Beth Niday, filed a response in support of petitioner's convictions. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2017, petitioner and his children were invited to spend the weekend at the home of the uncle of petitioner's wife in Jefferson County, West Virginia. In the days leading up to petitioner's visit, petitioner exchanged multiple text messages with the uncle's seventeen-year- old daughter, M.H. ("victim"), some of which were described as inappropriate. On the Saturday night of petitioner's visit, petitioner, the victim, and other family members watched a movie in the living room of the uncle's home. During the movie, petitioner began rubbing the victim's leg and, ultimately, placed his finger inside the victim's vagina. The victim recalled that she began crying but otherwise "froze" in response to petitioner's assault. The victim admittedly made no overt attempt to stop the assault aside from removing her hand from petitioner's pants after petitioner

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

placed her hand there. When the movie ended, petitioner stopped touching the victim and the victim immediately retreated to her bedroom.

The following morning, the victim disclosed the assault to her boyfriend. The boyfriend encouraged the victim to tell her parents and to fight back; however, the victim indicated that she was fearful of petitioner and fearful of her father's reaction. She did not tell her parents about the assault and instructed her boyfriend not to tell anyone. The victim was able to avoid petitioner for most of the following day, but as she was getting ready for bed, she was accosted by petitioner in the hallway of the home. The victim recalled that petitioner, without consent, grabbed her arm, spun her around, pulled down her pajama pants, bent her over, and engaged in sexual intercourse with her while standing in the hallway. Again, the victim recalled that she "froze" and made no overt attempt to stop the abuse. A third incident of abuse occurred immediately thereafter when petitioner guided the victim into a bedroom adjoining the hallway and onto a bed where he forcibly pinned the victim's legs over her head, rendering the victim unable to move while petitioner sexually assaulted her with his tongue.

The victim disclosed the additional acts of assault to her boyfriend, again securing the boyfriend's promise that he would tell no one. The boyfriend did not keep his promise and disclosed the victim's assault to his mother, who encouraged the boyfriend to call the victim's father and report the assault. After speaking with the victim's boyfriend, the victim's father spoke to his daughter, who advised that she had been assaulted by petitioner. Thereafter, the victim's father confronted the petitioner and called the police.

While initially denying any sexual intimacy with the victim, petitioner later admitted to the first and third incidents of assault. Petitioner argued that his sexual interactions with the victim were consensual, that the victim did not say no, did not strike him, and did not scream. Petitioner denied engaging in sexual intercourse with the victim, despite the presence of biological evidence to substantiate otherwise.[2]

On the night the abuse was reported, the victim was taken to the emergency room to be examined. The victim advised the forensic nurse completing her examination that, in response to the abuse, "she froze." No evidence of forced physical contact or bruising was observed upon the victim. Several days later, the victim was interviewed at the Child Advocacy Center by Ms. Jenna Hott ("Ms. Hott"). Like the nurse, the victim told Ms. Hott that in response to petitioner's unwanted sexual advances she froze. Ms. Hott found petitioner to be credible and opined that petitioner "experienced the freeze response to the traumatic event." Ms. Hott described the freeze response to trauma as a state of atonic immobility where a victim's body can either freeze up and not be able to move like a paralysis or the victim can still be mobile, but not be able to speak or think rationally about what to do next to get out of the situation.

In March of 2017, petitioner was indicted by the Jefferson County Grand Jury on three counts second-degree sexual assault in violation of West Virginia Code § 61-8B-4. West Virginia Code § 61-8B-4(a)(1) states, in pertinent part, that a person is guilty of sexual assault in the second

---

[2]The police recovered the victim's underwear and found male DNA present and could not exclude petitioner as the donor.

degree when such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion. West Virginia Code § 61-8B-1(1) defines "forcible compulsion" as "(a) [p]hysical force that overcomes such earnest resistance as might reasonably be expected under the circumstances or; (b) [t]hreat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or herself or another person . . . ." Further, West Virginia Code § 61-8B-1(1), defines "resistance" as "physical resistance or any clear communication of the victim's lack of consent."

Petitioner's jury trial commenced in February of 2019. At the trial, the State introduced the testimony of the victim; the forensic nurse who examined the victim; Ms. Hott; the victim's father; three officers from the Jefferson County Sheriff's Department; and Joshua Haynes, a forensic analyst with the West Virginia State Police Forensic Lab. At the conclusion of the State's evidence, petitioner moved for a judgment of acquittal arguing that the State failed to demonstrate any forcible compulsion regarding the incidents on the couch and in the hallway. The State argued against the motion stating that communication of resistance did not need to be verbalized and that the fact that the seventeen-year-old victim had tears streaming down her face while touched by a thirty-nine-year-old man clearly communicated her lack of consent. The trial court agreed with the State and denied petitioner's motion for judgment of acquittal. Specifically, the court found the victim's testimony that she froze, was unable to move, and had tears streaming down her face was sufficient evidence to deny petitioner's motion.

Petitioner testified at trial and denied abusing or assaulting the victim, arguing his sexual interactions with the victim were consensual (aside from the intercourse which he contends did not occur). At the conclusion of the three-day trial, petitioner was convicted of two counts of sexual assault in the second degree and one count of sexual abuse in the first degree. In June of 2019, petitioner was sentenced to two concurrent terms of imprisonment of ten to twenty-five years for the two counts of sexual assault in the second degree; one to five years of imprisonment for the one count of sexual abuse in the first degree, to run consecutively to petitioner's other sentences; and fifteen years of supervised release. It is from his conviction that petitioner now appeals.

On appeal, petitioner asserts one assignment of error. Petitioner contends that the evidence at trial was insufficient to sustain his convictions. This Court applies a de novo standard of review to questions of the sufficiency of the evidence. *State v. LaRock,* 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996). We have explained that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie,* 194 W. Va. 657, 461 S.E.2d 163 (1995).

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, in part, *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169. With these principles in mind we examine the evidence presented.

In the case *sub judice*, petitioner contends that the evidence at trial was insufficient to sustain his convictions as the State failed to establish the necessary element of forcible compulsion beyond a reasonable doubt.[3] Petitioner argues that the victim did not clearly communicate her lack of consent and did not exhibit any resistance when she remained motionless during their sexual encounters and alleged assaults. Rather, petitioner argues that the victim's actions communicated acquiescence. We are not persuaded by petitioner's argument that there is insufficient evidence to sustain his convictions.

Based upon our review of the record, we find that the State presented sufficient evidence to sustain petitioner's convictions and prove the necessary element of forcible compulsion beyond a reasonable doubt. As to the first incident of abuse, the forcible compulsion element was met when the victim testified that she had tears streaming down her face during the incident and was in a state of fear such that she froze. Further, it can be reasonably inferred that the victim's removal of her hand from petitioner's pants established earnest resistance to petitioner's advances. Additionally, petitioner's state of fear was demonstrated by her going straight to her room after the movie was over, preventing any further assault.

In *State v. Johnson*, 210 W. Va. 404, 412, 557 S.E.2d 811, 819 (2001), this Court reasoned that forcible compulsion was proven, in part, when a victim testified that she "acquiesced" to her stepfather's demands for sex because in the past she and her siblings had been more harshly punished when she refused sex. In the instant case, the victim, who was physically smaller than petitioner, testified that she was afraid how her father would react to petitioner if the father learned of petitioner's behavior and, in an effort to draw attention away from the abuse, the victim remained quiet.

As to the incident in the hallway, the victim testified that she froze and was motionless when she was grabbed by petitioner, spun around, her pajamas were pulled down, and she was

---

[3] Similar to West Virginia Code § 61-8B-4(a)(1), which describes sexual assault in the second degree, West Virginia Code § 61-8B-7(a)(1) states, in pertinent part, that a person is guilty of sexual abuse in the first degree when such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion.

taken from behind. With regard to the incident in the bedroom, the victim testified that she was forcibly held down by petitioner and was unable to move or retreat. The State argues that each of these acts, individually and collectively, establish forcible compulsion. As noted by this Court in syllabus point 3 of *Guthrie*, "[c]redibility determinations are for a jury and not an appellate court." Here, it was within the province of the jury to make credibility determinations and they did so, finding petitioner guilty of two counts of second-degree sexual assault and one count of first-degree sexual abuse. Reviewing the evidence in the light most favorable to the prosecution, this Court finds that there is sufficient evidence to support petitioner's convictions.

For the foregoing reasons, we affirm the petitioner's convictions.

Affirmed.

**ISSUED:** December 7, 2020

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman