In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-1667

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DELON ECHOLS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:21-cr-30048-SPM-1 — **Stephen P. McGlynn**, *Judge.*

_____

ARGUED APRIL 4, 2024 — DECIDED JUNE 26, 2024

_____

Before EASTERBROOK, HAMILTON, and KOLAR, *Circuit Judges*.

HAMILTON, *Circuit Judge*. A jury convicted defendant-appellant Delon Echols of attempting to possess a controlled substance with intent to distribute it. Echols has appealed, arguing that the district court erred by relying on Federal Rule of Evidence 801(d)(1)(B) to admit testimony about a witness's prior consistent statement after the defense suggested that the witness had fabricated her story blaming

Echols for drug shipments addressed to her through the mail. The problem is that the prior consistent statement was made after the witness's alleged motive to fabricate had already arisen. To be admitted under Rule 801(d)(1)(B) and *Tome v. United States*, 513 U.S. 150 (1995), a prior consistent statement offered to rebut charges of fabrication must have been made before the motive to fabricate arose.

In this case, however, the defendant did not raise this objection at trial, thus forfeiting it on appeal. Our review is only for "plain error." We conclude that admission of the prior statement was an error but did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. We affirm Echols' conviction.

I.  *Factual and Procedural Background*

In May 2019, Delon Echols and his friend Deshawn Burt were arrested in Utah for possessing marijuana. Burt's girlfriend at the time, Renita Burns, drove from southern Illinois to Utah to bond the two men out of jail. Burns then drove them back to Mascoutah, Illinois, where she lived with Burt, her five children, and her nephew. During the thousand-mile trip, Burns agreed to let Echols live with them temporarily. Echols moved in sometime around July 2019.

According to Burns, out of the blue in August 2019, she found a notice on her mailbox saying she had a package at the post office. She had not ordered anything but thought that one of her children might have. Burns went to the post office and picked up the package. She opened it and found bags that collectively held about two pounds of marijuana and several hundred Xanax pills, which are supposed to be distributed through prescription drug channels. She testified that she was

shocked and upset that someone had sent her unsolicited illegal drugs. Burns resolved to get rid of them. She tossed the marijuana in a dumpster and gave the Xanax pills to a friend.

According to Burns, she soon began to suspect that Echols was responsible for the mysterious package. She later testified that she had overheard Burt ask Echols, "Why would you send that to her house in her name?" Echols responded, "Well, you told me to."

Burns testified that she then began to fear another illicit package might come. So on August 26, she went back to her friend's house, picked up the remaining Xanax pills, and brought them to the local police station. She met with Sergeant Kyle Donovan to explain the situation and to turn in the remaining pills.

On August 28, Burns learned from Burt, who had found out from a cousin, that a second package would be coming. Burns found a police officer, told the officer about her situation, and asked the officer what she should do. The officer advised her to ask officers at police headquarters for their help.

Burns went to the police station the next day. She met with Lieutenant Matt Steinkamp. Burns recounted her story for the third time and explained that she believed a second package was coming. She asked Lieutenant Steinkamp what to do. He told her that the post office could stop her mail and he offered to go with her to the post office. Burns agreed. The two walked across the street to the post office and asked the postal employee to stop Burns' mail. The postal employee, however, told Burns that a package was already waiting for her.

Burns signed for the second package and took it back to the police station. Lieutenant Steinkamp opened it and found

two containers filled with vacuum-sealed bags of white powder. The Mascoutah police turned the case over to the federal Drug Enforcement Agency, who determined that the bags contained 911.5 grams (about two pounds) of MDMA, also known as ecstasy.

This appeal centers on an interview that occurred about two weeks later. On September 12, DEA Agent Ryan Bandy interviewed Burns. She told him about the first and second packages, and she described her belief that Echols was responsible for their delivery. Based on Burns' interview, among other evidence, Agent Bandy settled on Echols as the most likely culprit.

A grand jury indicted Echols for attempting to possess MDMA with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. The case went to trial. Witnesses included Burns, Sergeant Donovan, Lieutenant Steinkamp, Agent Bandy, and the postal worker. Agent Bandy's testimony focused primarily on his interview with Burns. Defense counsel objected to this line of questioning, arguing that Burns had "testified already" and that Agent Bandy's testimony was merely "bolstering" her testimony. The prosecutor argued that Agent Bandy's testimony was admissible as evidence of a prior consistent statement to rebut defense counsel's suggestion that Burns had fabricated her story to protect her boyfriend, Deshawn Burt. The district court agreed with the prosecution and admitted Agent Bandy's testimony. The defense did not mention the timing issue specifically, nor did the defense identify a time when Burns' arguable motive to fabricate had arisen.

After three days of trial, the jury returned a guilty verdict. Echols was sentenced to 70 months in prison and three years of supervised release. He has appealed.

II.  *Analysis*

Echols argues that the district court erred by admitting Agent Bandy's testimony about what Burns had told him on September 12. In response, the government contends that Agent Bandy's testimony is not hearsay according to Federal Rule of Evidence 801(d)(1)(B), which provides that a prior consistent statement offered to rebut an express or implied charge of recent fabrication is deemed not to be hearsay.

Whether Echols preserved this issue for appellate review or not, we need to decide whether the district judge erred in admitting the prior statement. The admission was an error, but the consequences depend on whether the defendant preserved the issue. We explain first why admission of the prior statement was an error, second why we review only for plain error, and third why defendant is not entitled to reversal on plain-error review.

A.  *Tome and the Timing Issue*

To qualify as non-hearsay under Rule 801(d)(1)(B), a witness's prior consistent statement must satisfy four elements: (1) the declarant must testify at trial and be subject to cross-examination; (2) the prior statement must be consistent with the declarant's trial testimony; (3) the prior consistent statement must be offered to rebut an explicit or implicit accusation of recent fabrication; and (4) the prior consistent statement must have been made before the declarant developed a motive to fabricate her testimony. *Tome*, 513 U.S. at 156–58; *Miller v. Greenleaf Orthopedic Associates, S.C.*, 827 F.3d 569, 574

(7th Cir. 2016). Only the fourth element, timing, is at issue in this appeal.

Echols argues that Regina Burns developed a motive to fabricate her story before her interview with Agent Bandy. According to Echols' theory, Burns learned that her boyfriend, Deshawn Burt, was involved in sending the packages to her house, and she decided to blame Echols so her boyfriend would not be prosecuted.

Burns' statement in her interview is just the sort of prior consistent statement that the Supreme Court held inadmissible in *Tome*. The defendant in that case shared custody of his daughter with his ex-wife. He was charged with sexually abusing his daughter. He argued that the child and her mother had concocted the sexual abuse allegations against him so that the mother could gain full custody. To rebut this accusation, the prosecution offered six witnesses who recounted out-of-court statements the daughter had made describing the sexual abuse. The Supreme Court held that the testimony from the six witnesses was not admissible under Rule 801(d)(1)(B). The Court wrote that Rule 801(d)(1)(B) embraced the "prevailing common-law rule for more than a century … that a prior consistent statement introduced to rebut a charge of recent fabrication or improper influence or motive was admissible if the statement had been made before the alleged fabrication, influence, or motive came into being, but it was inadmissible if made afterwards." 513 U.S. at 156. This rule ensured that the prior consistent statements would be aimed specifically at rebutting the charge of recent fabrication

rather than merely bolstering more generally the credibility of a witness subject to impeachment. *Id.* at 157–58, 165.[1]

Here, Echols argues that Burns developed a motive to fabricate her story in late August, either when she learned from her boyfriend that a second package was coming or a few days later when she actually picked up that second package. Both dates were before she spoke with Agent Bandy on September 12. According to *Tome*, to be admissible under Rule 801(d)(1)(B), Burns' prior consistent statements must have been made before her arguable motive to fabricate arose. We are not triers of fact, of course, but that theory of a motive to fabricate seems at least plausible. Because that arguable motive arose before Burns met with Agent Bandy on September 12, 2019, her statement to him fails to meet the fourth element of Rule 801(d)(1)(B) and should not have been admitted.

The two cases cited by the government to challenge this conclusion are easily distinguishable. In *United States v. Fulford*, 980 F.2d 1110 (7th Cir. 1992), Fulford was on trial for conspiracy to distribute methamphetamine. He sought to exclude testimony from his co-conspirator, Richard Elmore, who had made incriminating statements to a police officer when Elmore was arrested for selling methamphetamine. *Id.* at 1112–13. Among other things, Elmore told the officer that he had purchased $10,000 worth of methamphetamine from Fulford. At the time of his arrest, Elmore "was given no deal or other incentive to provide the information and was told only that his cooperation would be brought to the attention of the United States Attorney." *Id.* After he was indicted,

---

[1] The language of Rule 801(d)(1)(B) has been revised since *Tome* was decided, but not in any way relevant to this case.

however, Elmore agreed to cooperate with the government in return for "immunity for all accurate testimony thereafter rendered." *Id.*

Elmore testified at Fulford's trial. To rebut Fulford's accusation that Elmore had fabricated his testimony, the government offered and the court admitted the prior consistent statements that Elmore had made immediately following his arrest. *Id.* at 1113–14. Fulford argued that this testimony was not admissible under Rule 801(d)(1)(B) because Elmore had fabricated his story to secure favorable sentences for himself and his brother, who was also involved in the conspiracy. *Id.*

We held that the prior consistent statements were properly admitted. *Id.* at 1114. While noting that "reasonable minds" could differ as to whether Elmore developed his motive to fabricate when he was arrested or when he later agreed to cooperate, we chose to focus on the later time because that was when Fulford asserted that Elmore had developed his motive to lie. Because Elmore's post-arrest statements were made before he entered into his cooperation agreement, they met the requirements of *Tome* and were admissible under Rule 801(d)(1)(B). The same reasoning distinguishes the government's other case, *United States v. Stoecker*, 215 F.3d 788 (7th Cir. 2000). Because the prior consistent statements in that case were also made before the arguable motive to fabricate had arisen, they were properly admitted. *Id.* at 791.[2]

---

[2] *Fulford* was decided before *Tome*, but we had already held that Rule 801(d)(1)(B) embodied the timing requirement adopted in *Tome*. See *Fulford*, 980 F.2d at 1114, citing *United States v. Lewis*, 954 F.2d 1386, 1391 (7th Cir. 1992).

B. *Standard of Review*

Having concluded that the district court erred in admitting Burns' prior consistent statement, the question is whether that error demands reversal. As we explain next, Echols did not raise this objection in the district court. We review the issue only for "plain error." E.g., *United States v. Bowling*, 952 F.3d 861, 869 (7th Cir. 2020).

1. *Issue Preservation*

To preserve an evidentiary issue for appellate review, a party must make a timely objection at trial. The objection must be specific enough to give the opposing party and the trial judge notice of the basis unless the basis for the objection is "apparent from the context." Fed. R. Evid. 103(a); *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir. 1988). The rule is designed to enable parties to dispute evidentiary issues in the context in which they arise, and to give the trial judge—who has the benefit of observing the presentation of evidence firsthand and in real time—the opportunity to make a well-informed ruling.

In applying this objection requirement, our case law has developed a few governing principles. First, a party cannot cast an objection at too high a level of generality. See *United States v. Swan*, 486 F.3d 260, 263–64 (7th Cir. 2007) (general "hearsay" objection did not preserve objection to whether the witness was an agent of defendant and was testifying to matters within scope of his authority, as required by Rule 801(d)(2)(D)); *United States v. Barker*, 27 F.3d 1287, 1292 (7th Cir. 1994) (general "foundation" objection did not preserve specific subcategory of a foundation objection, such as inadequate foundation to introduce physical exhibits, hearsay

testimony, parol evidence, or expert witness testimony); *United States v. Thomas*, 845 F.3d 824, 831 (7th Cir. 2017) (defense counsel's objection to entire presentence report at sentencing did not preserve objection to specific sentencing enhancement for maintaining a drug house); *United States v. Linwood*, 142 F.3d 418, 422–24 (7th Cir. 1998) (defense counsel's blanket objection to all jury instructions did not preserve objection to one particular jury instruction). A party must articulate her objection with enough specificity to give the opposing party and the trial judge a fair opportunity to consider the objection, debate it, and rule on it.

A party also cannot preserve one specific objection by making a different specific objection in the trial court. E.g., *Bowling*, 952 F.3d at 868 (objections at trial based on relevance and improper lay testimony did not preserve Rule 404(b) objection); *United States v. Price*, 418 F.3d 771, 779 (7th Cir. 2005) (objection at trial based on relevance did not preserve Rule 403 objection); *United States v. McClellan*, 165 F.3d 535, 551–52 (7th Cir. 1999) (objection at sentencing based on sufficiency of evidence did not preserve objections based on reliability and uncorroborated hearsay); *United States v. Hickerson*, 732 F.2d 611, 613 (7th Cir. 1984) (objection at trial to authenticity of photograph did not preserve relevance objection).

### 2. *Echols' Forfeiture*

Echols argues on appeal that Rule 801(d)(1)(B) does not apply because of a *Tome* issue. He contends that Renita Burns developed her motive to fabricate before making her statement to Agent Bandy. Here is the key passage from the trial transcript:

Prosecutor:      So let's talk about your inter-
                 view with Renita. When did
                 that occur?

Agent Bandy:     I believe September 12th,
                 2019.

Prosecutor:      Okay. And where did you
                 meet with her?

Agent Bandy:     At her apartment in Mas-
                 coutah, Illinois.

Prosecutor:      Did she agree to speak with
                 you freely?

Agent Bandy:     Yes, ma'am.

Prosecutor:      All right. Can you tell me
                 what, if anything, she told
                 you that day when you in-
                 terviewed her?

Agent Bandy:     So the day that we inter-
                 viewed her, we – I just asked
                 her, "Hey, tell me what hap-
                 pened." And she said that
                 she had met Delon Echols
                 earlier that year –

Defense Counsel: Well, Your Honor, I'm going
                 to make an objection. She's

testified already. I mean, I'm not –

Prosecutor:              Your Honor, I would say that these are prior consistent statements which are admissible, as [defense counsel] has previously tried to do prior inconsistent statements with Ms. Burns. So at this point, this witness [sic] is proper to admit her prior consistent statements.

Defense Counsel:    Well, it's bolstering, but I'm not sure what they're trying to correct of what she said earlier.

Prosecutor:              Prior consistent statements are proper where Defense has introduced – has tried to imply a recent fabrication. [Defense counsel] throughout [Renita Burns'] testimony has tried to imply that there were fabrications. However, Agent Bandy's testimony would show that she has been consistent since September 12th, 2019.

District Judge:          Yeah. And that – you high-
                         lighted that she did not tell
                         the first officer about meet-
                         ing the defendant in Utah, so
                         I will allow the line of ques-
                         tioning. Your objection is
                         overruled.

Most specifically, defense counsel objected to improper
bolstering. More generally, the context shows that the objec-
tion was understood to also raise hearsay concerns—the pros-
ecutor relied on Rule 801(d)(1)(B) to get around the hearsay
issue and admit the out-of-court statement. The problem is
that under these circumstances, where the admissibility of the
prior statement depended on a specific timing issue, neither
the bolstering objection nor the implied but obvious hearsay
objection preserved for appeal the specific timing issue under
Rule 801(d)(1)(B). See *United States v. Swan*, 486 F.3d 260, 263–
64 (7th Cir. 2007) (general hearsay objection did not preserve
defendant's objection that party-opponent declarant was not
acting within his authority as defendant's agent as required
by Rule 801(d)(2)(D)). In this case, during the back-and-forth
defense counsel did not raise a timing objection based on
*Tome*.

In other words, the defense raised a general hearsay objec-
tion, the prosecutor responded with a seemingly applicable
exception, and the defense did not respond further or raise
the specific timing issue that could defeat the exception. The
defense counsel's silence in the face of a new ground for ad-
mission did not preserve an objection to that new ground.
Specificity is particularly important for a timing objection un-
der Rule 801(d)(1)(B). To resolve such an objection, the court

needs to know the objecting party's theory as to when the witness's arguable motive to fabricate arose. If the objecting party does not identify that theory and timing, and if they are not obvious from context, the timing issue has not been presented fairly to the court. An objecting party does not need to use buzzwords to preserve a specific objection, but the defense counsel here did not alert the judge to the timing problem that lies at the heart of this appeal.[3]

Our holding comports with other cases that have addressed issue preservation under Rule 103 for Rule 801(d)(1)(B) objections. Squarely on point is the First Circuit's decision in *United States v. Piva*, 870 F.2d 753 (1st Cir. 1989), which was decided years before *Tome* but after Rule 801(d)(1)(B) had been limited to rebutting charges of "recent" fabrications. In *Piva*, the defense raised a general hearsay objection to a prior consistent statement but did not raise the timing issue. On appeal, the defense argued that the statement was made after the motive to fabricate had arisen. The First Circuit deemed the specific objection forfeited: "This lack of specificity, after the judge believed she had resolved the objection, precludes appellant from raising this issue for the first time before us." *Id.* at 759.

Defendant has not cited and we have not found any cases that directly support Echols' contention that he preserved his timing objection. Echols relies heavily upon *United States v. Whitaker*, in which we held that an objection to the reliability

---

[3] We are aware that Rule 801(d)(1)(B) is technically a matter of the definition of hearsay rather than an "exception," but we see little practical difference for purposes of deciding whether the defense preserved the issue.

of a process for retrieving records sufficiently preserved an authenticity objection. 127 F.3d 595, 600–01 (7th Cir. 1997). While the objecting party did not cite the specific rule he was referencing, we held that explicitness was not needed because the reason for the objection was "clear from the context." *Id.* at 601. Thus, *Whitaker* is inapposite to this case because, as discussed above, context did not make clear Echols' *Tome* objection.

A Second Circuit decision should be noted because of its factual similarity to the trial transcript in this case. In *United States v. Quinto*, 582 F.2d 224 (2d Cir. 1978), the appellate court reviewed a *Tome* timing issue (before *Tome* was decided) for abuse of discretion after the defendant's trial counsel had argued that the testimony was being offered for "bolstering" purposes. See *id.* at 229 n.2. Although reviewing for abuse of discretion implies that the issue was preserved, the appellate court did not address issue preservation, so it did not hold expressly that a "bolstering" objection preserved a *Tome* objection. Moreover, whereas Echols' trial counsel remained silent after making his bolstering objection, the defense counsel in *Quinto* engaged in a lengthy exchange with the trial judge discussing the finer points of Rule 801(d)(1)(B). *Quinto* does not persuade us that Echols' general hearsay objection was enough to alert the judge to his theory and to preserve his *Tome* objection. The plain-error standard of review applies here.

C. *Applying Plain-Error Review*

On plain-error review, we reverse only if four requirements are met: "(1) an error occurred, (2) the error was plain, (3) it affected the defendant's substantial rights, and (4) it seriously affected the fairness, integrity, or public reputation of

the proceedings." *United States v. Thomas*, 933 F.3d 685, 690 (7th Cir. 2019), citing *United States v. Olano*, 507 U.S. 725, 732–38 (1993).

The first requirement is met given our conclusion that the district court erred in admitting Agent Bandy's testimony under Rule 801(d)(1)(B). So is the second requirement. An error is "plain" when it is obvious and undebatable. *United States v. Christian*, 673 F.3d 702, 708 (7th Cir. 2012). The *Tome* error here satisfies this standard. Binding precedent establishes that Burns' prior consistent statement was made too late to be introduced under Rule 801(d)(1)(B).

We assume without deciding that the third element is satisfied because we conclude that the fourth element is clearly not met. See *United States v. Muhammad*, 46 F.4th 531, 534 (7th Cir. 2022) (addressing only fourth element of plain-error test); *United States v. Pulliam*, 973 F.3d 775, 781 (7th Cir. 2020) (declining to decide whether third element was satisfied because fourth element clearly was not). Echols has not shown that this evidentiary error caused a "miscarriage of justice" or created "a substantial risk of convicting an innocent person." *Pulliam*, 973 F.3d at 781, quoting *United States v. Maez*, 960 F.3d 949, 962 (7th Cir. 2020).[4]

Our review of the record convinces us that Agent Bandy's testimony about the prior consistent statement played only a minor role in this case. Much of what he said merely repeated testimony that Burns had already offered. The prosecutor did

---

[4] As we noted in *Maez*, "defendants can sometimes show an effect on fairness or integrity without a claim of innocence," 960 F.3d at 962, citing *Rosales-Mireles v. United States*, 585 U.S. 129, 137 (2018), but the error here did not affect the defendant's sentence, as in *Rosales-Mireles*.

not rely on Agent Bandy's testimony during closing arguments. The prosecutor focused instead on other evidence connecting Echols to the packages.

Additionally, other evidence remains unchallenged that connects Echols to the illicit drugs. Most notably, the postal worker who gave Burns the second package testified that a man had come in earlier that day asking to pick up the package of MDMA addressed to Burns. The postal worker identified Echols as that man.

The limited impact of Agent Bandy's testimony contrasts with other cases in which we have reversed for evidentiary errors on plain-error review. In *United States v. Williams*, we reversed a conviction where an FBI agent—who was supposed to explain only the background of the police investigation—testified that the defendant had been identified as the suspected robber by a confidential informant. 133 F.3d 1048, 1050 (7th Cir. 1998). We held that this evidence should have been excluded under Rule 403 because its slight probative value was significantly outweighed by its prejudicial effect. *Id.* at 1052. There was a "strong possibility that the jury made improper use of the evidence" by inferring the defendant's guilt. *Id.* Admitting the evidence was a reversible plain error even though defense counsel did not raise a Rule 403 objection at trial.[5]

---

[5] The "course-of-investigation" testimony in *Williams* about an anonymous informant's accusation against the defendant was far more damning than the prior consistent statement here. Later cases show that *Williams* correctly deemed the testimony inadmissible and highly prejudicial hearsay that violated the defendant's right of confrontation under the Sixth Amendment. See *Crawford v. Washington*, 541 U.S. 36 (2004); *Jones v. Basinger*, 635 F.3d 1030 (7th Cir. 2011).

In Echols' case, however, we find no such "strong possibility" of impermissible inferences. Ample evidence connected Echols to the illicit packages that was untainted by the prior consistent statement. The prior consistent statement was a minor detail in the trial that does not require reversal on plain-error review.

The judgment of the district court is AFFIRMED.