**FILED**

**June 10, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 23-535
_____

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent,

v.

RANDY C. CAIN,
Defendant Below, Petitioner.

_____

Appeal from the Circuit Court of Cabell County
The Honorable Gregory L. Howard, Jr., Judge
Case No. 22-F-234

AFFIRMED, IN PART, REVERSED, IN PART,
AND REMANDED

_____

Submitted: February 10, 2026
Filed:  June 10, 2026

Robert C. Catlett, Esq.
Robert C. Catlett Law Office
Wellsburg, West Virginia
Counsel for Petitioner

John B. McCuskey, Esq.
Attorney General
Mattie F. Shuler, Esq.
Assistant Attorney General
Office of the Attorney General
Charleston, West Virginia,
Counsel for Respondent

JUSTICE TITUS delivered the Opinion of the Court.

JUSTICE TRUMP concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.      "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard."  Syllabus Point 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

2.      "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*."  Syllabus Point 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

3.      "'Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.' Syl. Pt. 1, *State v. Maynard*, 183 W. Va. 1, 393 S.E.2d 221 (1990)." Syllabus Point 2, *State v. Dillon,* 191 W. Va. 648, 447 S.E.2d 583 (1994).

4.      "An error in the admission of evidence not objected to by the defendant is deemed waived by him." Syllabus Point 10, *State v. Bragg*, 140 W. Va. 585, 87 S.E.2d 689 (1955).

i

5.     "'An objection to a circuit court ruling that admits evidence must be timely made and must state the specific ground of the objection, if the specific ground is not apparent from the context.' Syl. Pt. 3, *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010)."  Syllabus Point 1, *State v. Blickenstaff*, 239 W. Va. 627, 804 S.E.2d 877 (2017).

6.     "Where improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury."  Syllabus Point 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979).

7.     "A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense."  Syllabus Point 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

ii

**TITUS, Justice:**

In June 2023, a Cabell County jury convicted Petitioner Randy C. Cain of malicious assault, use or presentment of a firearm during the commission of a felony, domestic battery, wanton endangerment, and being a person prohibited from possessing a firearm. The victim was Mr. Cain's elderly mother. In this direct appeal, Mr. Cain argues that this Court should reverse two of his convictions—use or presentment of a firearm during the commission of a felony and wanton endangerment—because the circuit court erred by improperly admitting hearsay evidence. Mr. Cain argues that without the inadmissible hearsay, there is no evidence of his use or presentment of a firearm, or that he performed an act with a firearm, statutory elements of the crimes. He also contends that the circuit court erred by refusing to give his hearsay limiting jury instruction. For the reasons explained below, we affirm Mr. Cain's conviction of use or presentment of a firearm during the commission of a felony, reverse his conviction of wanton endangerment, and remand the case to the circuit court for further proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Cain assaulted his mother, Brenda McClellan, in March 2022 while she was living with him in a mobile home in Ona, West Virginia. Ms. McClellan was able to leave a voicemail message for her sister, Anita Vasquez, asking for help, and Ms. Vasquez called 911. When Cabell County deputies arrived at the scene with Ms. Vasquez, they

1

observed a distraught Ms. McClellan, crying, with multiple injuries. Ms. McClellan told a deputy that her son, Mr. Cain, "had been abusing her for a number of days," kicked her on the legs with steel-toed boots, hit her with some kind of club or bat, hit her on the head with the butt end of a pistol, and fired a shot in the home.

Trooper Dakota Render[1] allowed Ms. Vasquez to assist Ms. McClellan after he and Deputy Rogers detained Mr. Cain. Ms. McClellan told Ms. Vasquez that Mr. Cain had struck her in the head with a pistol. Deputy Bailey later executed a search warrant at the home where he found seven firearms in Mr. Cain's bedroom, including two handguns. He also found a television with what appeared to have a bullet hole in it.

In September 2022, the State indicted Mr. Cain for malicious assault, use or presentment of a firearm during the commission of a felony, domestic battery, unlawful restraint, wanton endangerment, and being a person prohibited from possessing a firearm. Relevant to this appeal, Count II of the indictment charged Mr. Cain with committing the offense of "'USE OR PRESENTMENT OF A FIREARM DURING THE COMMISSION OF A FELONY' by unlawfully, feloniously, and intentionally using or presenting a firearm during the commission of the felony offense of 'Malicious Assault,' against the peace and

---

[1] At the time of these crimes, Trooper Render was employed by the Cabell County Sheriff's Department. However, by the time of Mr. Cain's trial, he was employed as a West Virginia State Trooper.

dignity of the State."[2]  Count V of the indictment charged Mr. Cain with committing the offense of "'WANTON ENDANGERMENT' by unlawfully, feloniously, and knowingly performing an act with a firearm which created a substantial risk of death or serious bodily injury, to-wit:  by discharging a firearm inside the occupied residence located at [Mr. Cain's address], against the peace and dignity of the State."[3]

Ms. McClellan was in poor health, so the parties arranged to take her testimony by deposition prior to trial.  During her deposition on June 2, 2023, Ms. McClellan testified that she was living with her son, Mr. Cain, and, during this time, he kicked her legs with steel-toed boots and hit her on the back with a bat.  Ms. McClellan stated that she called her sister, Ms. Vasquez, and left her a message "to come and get me." Ms. McClellan said that, after the incident, she could not walk, and that she had to use a wheelchair because her "legs were hurt."  She did not remember talking to the police, but confirmed that she would have told them the truth.

---

[2] *See* W. Va. Code § 61-7-15a ("As a separate and distinct offense, and in addition to any and all other offenses provided for in this code, any person who, while engaged in the commission of a felony, uses or presents a firearm shall be guilty of a felony and, upon conviction, shall be imprisoned in a state correctional facility for not more than ten years.").

[3] *See* W. Va. Code § 61-7-12 ("Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years, or, in the discretion of the court, confined in the county jail for not more than one year, or fined not less than two hundred fifty dollars nor more than two thousand five hundred dollars, or both.  For purposes of this section, the term 'firearm' shall have the same meaning ascribed to such term as set forth in section two of this article.").

The State showed Ms. McClellan pictures of her injuries that were taken at the hospital, and Ms. McClellan stated that one of the pictures showed "[w]here he kicked me with a steel-toed boot." Ms. McClellan was also shown a picture of an injury behind her ear, but she could not recall how she suffered that injury. Ms. McClellan stated that she did not remember if anyone shot a gun in the house, and she did not know if there were any guns in her home. However, Ms. McClellan admitted that she had difficulty with her memory. Ms. McClellan stated that, initially, she did not want to press charges or testify against her son, "[b]ecause I didn't want anything to happen to him[.]" She said, "I love him very much. More than anything in the world[,] and "I want to protect my son." Because Ms. McClellan passed away before Mr. Cain's trial began, the State played the video of her deposition for the jury.

Prior to trial, the defense filed a Motion in Limine to Preclude the Introduction of Hearsay Statements by the State, including "any statements made by Brenda McClellan outside of the deposition." The State opposed the motion, stating that, "[u]pon information and belief," the defense sought to "exclude a recorded audio Statement of Brenda McClellan[,] . . . recorded by a Cabell County Sheriff's Deputy on the date of [Mr. Cain's] arrest in this matter." The State argued that the statement was not hearsay under Rule 801 of the West Virginia Rules of Evidence. In response, the defense argued "that any statement made by the victim is inadmissible hearsay," and requested that the circuit court "bar the admission of the victim's recorded interview from being introduced

4

at trial." The circuit court addressed the defense's motion in limine from the bench on the first day of trial, acknowledging the "motion about the prior recorded statement of the alleged victim in this case," and ruling that it would not allow the recording "to be played in full[,]" but would allow portions that were consistent with her deposition testimony to be played for the jury. The State responded that, "[a]t this time we do not believe that we will be playing it." The State also confirmed that the circuit court's ruling covered "just the recorded statement?" And the circuit court answered: "Correct." The circuit court asked the parties if there was anything else that it should consider, and the State responded: "No, not in regard to that ruling." The defense did not respond.

Mr. Cain's trial began on June 23, 2023. As background, Ms. Vasquez testified that her sister, Ms. McClellan, lived with her before she moved in with her son, Mr. Cain. The State asked Ms. Vasquez about a voicemail message she received from Ms. McClellan, and she testified that she was concerned after receiving it because Ms. McClellan "asked me to get the police and come get her[.]" The State then asked Ms. Vasquez, "what else in that message made you concerned?[,]" which drew a hearsay objection from the defense. In response, the State argued that Ms. Vasquez's answer would be admissible because the State was seeking to elicit "the effect [the message] had on the listener and why she called 911." The circuit court ruled, "[s]o far I'll allow what she said. I'll allow her to answer the question." Ms. Vasquez testified that Ms. McClellan "called and asked me to bring the police . . . to pick her up[,]" and stated "that he'd already broke both of her legs and hit her in the head[,] and she thinks her back was broken[.]"

5

Ms. Vasquez testified that after receiving the voicemail message, she called 911 and accompanied law enforcement when they went to check on Ms. McClellan. Upon arriving at the home, Ms. Vasquez remained outside "until after [the officers] did all their things." Ms. Vasquez testified that when she was allowed to enter the home to assist Ms. McClellan, she observed that her "sister was black and blue and purple and she had cuts on her legs and she was a mess[.]" Ms. Vasquez identified a picture of Ms. McClellan's leg, which she described as "gashed open because . . . she said he kicked her. He kicked her with steel-toe boots on."

Ms. Vasquez also identified a picture that showed an injury behind Ms. McClellan's ear and stated that the picture showed where "[s]he said he hit her in the head with a gun." She confirmed that the photograph accurately depicted what she saw when she arrived on scene, and the photograph was admitted into evidence without objection. As the State published this photograph for the jury, Ms. Vasquez reiterated, "[t]hat is my sister, and that is behind her ear where she said he –[.]" At this point, the defense objected, and the circuit court stated, "[w]ell, she's identified what it is," however the circuit court sustained the objection "to anything further as to what she was told."

Ms. Vasquez testified that Ms. McClellan initially refused medical treatment for her injuries, and that she stayed at Ms. Vasquez's house for "a day before she went to the hospital. She couldn't stand. Her legs wouldn't hold her where they was both broken."

6

Ms. Vasquez testified that, when she was helping move her sister out of the home, she saw "blood all over her mattress" that she suspected was from Ms. McClellan's injured legs. Ms. Vasquez testified that Ms. McClellan was at the hospital for "quite a few days[,]" and moved back in with her when she was released from the hospital.

During cross-examination, defense counsel asked Ms. Vasquez if Ms. McClellan had "troubles with her memory?" And Ms. Vasquez responded, "No. It was sharp." He asked if Ms. McClellan ever said "things that weren't true?" And Ms. Vasquez responded, "[s]he has in the past said things that were off the wall due to too much ammonia in her system because her liver wasn't – kidneys wasn't filtering it out. That was at the hospital. I never noticed it myself." Defense counsel asked if Ms. McClellan had suffered from delirium, and if Ms. Vasquez "[c]ould describe what occurs with that?" At that point, the State objected on the basis that Ms. Vasquez was not a medical expert, and the circuit court sustained the objection. Ms. Vasquez testified that Ms. McClellan was prescribed medication to help "take the ammonia out of [her] system[,]" but "they didn't give it to her regularly while she was in the hospital, and that's why she became delirious. If they had gave it to her, it wouldn't have happened." Ms. Vasquez stated that Ms. McClellan did not miss taking this medication when she was at home, and that "she'd been in the hospital some time before it happened."

Trooper Render testified that he was employed as a deputy by the Cabell County Sheriff's Department at the time he received a call to respond to a domestic

disturbance at Mr. Cain's residence on March 25, 2022. Trooper Render testified that he and Deputy Rogers met Ms. Vasquez at a gas station in Ona and listened to Ms. McClellan's voicemail message that described the incident with Mr. Cain. The defense objected on the basis of hearsay, and the circuit court overruled the objection. Trooper Render testified that they listened to Ms. McClellan's voicemail message, which stated that "her son had pistol-whipped her and fired a gun in the house and that she needed the police." The defense objected on the basis of hearsay, but the circuit court did not rule on the objection.

Trooper Render testified that after hearing the voicemail message, he proceeded to conduct a welfare check on Ms. McClellan. Mr. Cain came out onto the porch as Trooper Render and Deputy Rogers approached the home. Trooper Render testified that he could see Ms. McClellan through the screen door and that she was sitting on the couch, "distraught" and "crying." When he walked into the home, Trooper Render observed that Ms. McClellan had "multiple cuts and bruises on her legs." As Trooper Render began to recount his conversation with Ms. McClellan, the defense objected on the basis of hearsay. The circuit court overruled the objection, and Trooper Render testified as follows:

> I began to ask Ms. McClellan how she sustained her injuries essentially. She starts to state to me that Mr. Cain had been abusing her for a number of days between that Sunday and that Friday I believe that we showed up. States that he had kicked her with a pair of steel-toe boots and then – she had, you know, a multitude of cuts an[d] bruises on her legs. That he had beat her with some kind of club or a bat. That he had struck her with the butt end of a pistol and that after he struck her with the butt end of the

8

pistol[,] he fired the gun in the house. She then stated to me that Mr. Cain wouldn't let her go to seek medical treatment, wouldn't let her go to the hospital because he worried that he would go to jail if he did take her to the hospital.

Trooper Render testified that, despite her physical injuries and being upset, Ms. McClellan was in a coherent state of mind and that she was able to communicate with him effectively. At the conclusion of Trooper Render's direct examination, the circuit court stated, "that some of those objections in my prior rulings were under [West Virginia Rule of Evidence] 803 subsections 1 and 3."

Deputy Jacob Bailey, with the Cabell County Sheriff's Office, testified that he executed a search warrant at Mr. Cain's residence on March 25, 2022, and found seven firearms, including two pistols, and a pair of steel-toed boots. He did not find any firearms in Ms. McClellan's room. Deputy Bailey stated that when he was executing the search warrant, he was looking for evidence that a firearm had been fired in the home. Deputy Bailey testified that he observed "a bullet hole" in a television that was found behind a couch in the living room. On cross-examination, Deputy Bailey admitted that he was not an expert in "gunshot identification[,]" and he did not know what kind of firearm made the hole in the television.

Roger Dale Mosley, a digital forensic analyst with the West Virginia State Police, testified about three still images that he extracted from video cameras located outside Mr. Cain's residence. Mr. Mosley stated that the three images, dated between

9

March 21 to 23, 2022, showed "the same gentleman" standing on the porch of the residence with a handgun. Mr. Mosley further testified that, based upon his review of the video footage, Mr. Cain "appeared to live" at the residence, because he "came and went freely. Got in the vehicle, drove down the driveway, came back. Was there for several days." At the conclusion of Mr. Mosley's testimony, the State rested its case-in-chief.

The defense presented no evidence. Its theory of the case was that Ms. McClellan sustained injuries when she fell accidentally and that she was confused when reporting how her injuries occurred. During closing statements, defense counsel stated that Ms. McClellan "simply is not a credible reliable witness because of her many medical, mental[,] and memory issues."[4]

Ultimately, the jury acquitted Mr. Cain of unlawful restraint and convicted him of the remaining charges in the indictment. On August 15, 2023, the circuit court sentenced Mr. Cain to four to ten years of imprisonment for malicious assault (with a recidivist enhancement), six years of imprisonment for use or presentment of a firearm during the commission of a felony, twelve months in jail for domestic battery, three years of imprisonment for wanton endangerment, and three years of imprisonment for being a prohibited person in possession of a firearm. Mr. Cain appeals two of his convictions: use or presentment of a firearm during the commission of a felony and wanton endangerment.

---

[4] We set forth what transpired during the jury instruction conference below, in our discussion of Mr. Cain's second assignment of error, *infra*.

10

## II.

### STANDARD OF REVIEW

Mr. Cain asks this Court to reverse two of his convictions due to alleged evidentiary errors made by the circuit court during the jury trial. Trial courts have considerable discretion in determining the admissibility of evidence. This Court has held that, "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

Mr. Cain also contends that the circuit court erred by refusing to give his limiting jury instruction. "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. Pt. 1, *State v. Hinkle*, 200 W. Va. 280, 489 S.E.2d 257 (1996).

## III.

### DISCUSSION

Mr. Cain asserts that various errors by the circuit court undermine his convictions of use or presentment of a firearm during the commission of a felony and wanton endangerment. He first challenges portions of Ms. Vasquez and Trooper Render's trial testimony, arguing that they contained inadmissible hearsay statements by the victim,

11

Ms. McClellan.  Mr. Cain also argues that the circuit court further erred when refusing to give his offered limiting instruction on the use of hearsay evidence.

*A.  Out-of-Court Statements by the Victim*

Mr. Cain argues that the circuit court erred in allowing Ms. Vasquez and Trooper Render to testify about what Ms. McCellan told them about his use or presentment of a firearm during the crimes.  Specifically, he challenges the admissions of statements Ms. McClellan made to Ms. Vasquez as well as Trooper Render when they arrived at the scene.  According to Mr. Cain, the only evidence that he used or presented a firearm in this case, or that he performed an act with a firearm, was inadmissible hearsay testimony.

In analyzing the application of the hearsay rule and its exceptions, we begin with the basic premise that,

> "[g]enerally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules." Syl. Pt. 1, *State v. Maynard,* 183 W. Va. 1, 393 S.E.2d 221 (1990).

Syl. Pt. 2, *State v. Dillon*, 191 W. Va. 648, 447 S.E.2d 583 (1994).  In addition, we note that

"[t]rustworthiness is the linchpin of admissibility."  *State v. Johnson*, 210 W. Va. 404, 410,

557 S.E.2d 811, 817 (2001).

The State responds that some of the out-of-court statements of Ms.

McClellan, testified to by Ms. Vasquez, were admitted without objection, and therefore Mr.

Cain waived the right to raise the issue on appeal.  The State further argues that much of

the challenged testimony falls under hearsay exceptions provided for by Rules 803(1),

803(3) and/or 807 of the West Virginia Rules of Evidence.  In his reply, Mr. Cain asserts

that his original hearsay objection to Ms. Vasquez's testimony was sufficient to preserve

the issue on appeal and that the challenged statements are not admissible under any hearsay

exception.[5]

On the issue of preservation, we agree with the State that Mr. Cain waived

his claim about Ms. Vasquez's testimony because he failed to timely object and never

moved to strike the out-of-court statement.  As Mr. Cain is challenging the introduction of

hearsay evidence bearing on his alleged use or presentment of a firearm, we note that the

defense did not object when Ms. Vasquez testified that Ms. McClellan said that Mr. Cain

---

[5] Mr. Cain does not argue that his pretrial motion in limine preserved the issue on appeal.  We further note that when the circuit court ruled on his motion on the first day of trial, the focus was Ms. McClellan's recorded statement to the deputy.  Mr. Cain neither pursued nor obtained a broader ruling on hearsay generally.

"hit her in the head with a gun."[6]  Ms. Vasquez continued to testify and confirmed that photographic evidence accurately depicted what she saw when she arrived on scene.  The photograph was admitted into evidence without objection.  The State published this photograph for the jury and Ms. Vasquez reiterated, "[t]hat is my sister, and that is behind her ear where she said he –[.]"  At this juncture, the defense finally objected, and the circuit court stated, "[w]ell, she's identified what it is[;]" nonetheless, the circuit court sustained the objection "to anything further as to what she was told."  The defense's late objection did not preserve Mr. Cain's ability to claim error here.

This Court has held that, "[a]n error in the admission of evidence not objected to by the defendant is deemed waived by him."  Syl. Pt. 10, *State v. Bragg*, 140 W. Va. 585, 87 S.E.2d 689 (1955).  We have also held that, "'[a]n objection to a circuit court ruling that admits evidence must be timely made and must state the specific ground of the objection, if the specific ground is not apparent from the context.' Syl. Pt. 3, *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010)."  Syl. Pt. 1, *State v. Blickenstaff*, 239 W. Va. 627, 804 S.E.2d 877 (2017).[7]

---

[6] The defense objected, on the basis of hearsay, to Ms. Vasquez's earlier testimony when the State asked, "what else in [Ms. McClellan's voicemail] message made you concerned," and the court overruled the objection.  Importantly, this earlier testimony made no reference to a firearm.

[7] Rule 103(a) of the West Virginia Rules of Evidence requires that,

[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and: (1) if the ruling admits

14

When applying this objection requirement, courts have developed governing principles. For instance, "a party cannot cast an objection at too high a level of generality." *United States v. Echols*, 104 F.4th 1023, 1028 (7th Cir. 2024); *see United States v. Swan*, 486 F.3d 260, 263–64 (7th Cir. 2007) (general "hearsay" objection did not preserve objection to whether the witness was an agent of defendant and was testifying to matters within scope of his authority); *United States v. Barker*, 27 F.3d 1287, 1292 (7th Cir. 1994) (general "foundation" objection did not preserve specific subcategory of a foundation objection, such as inadequate foundation to introduce physical exhibits, hearsay testimony, parol evidence, or expert witness testimony). Rather, a party must articulate his objection with enough specificity to give the opposing party, and trial court, "a fair opportunity to consider the objection, debate it, and rule on it." *Echols*, 104 F.4th at 1028.

To summarize, defense counsel's general hearsay objection early in Ms. Vasquez's testimony did not preserve the issue Mr. Cain raises on appeal. Specifically, defense counsel did not timely object or move to strike Ms. Vasquez's testimony, while identifying a picture of an injury behind Ms. McClellan's ear, that "[s]he said he hit her in

---

evidence, a party, on the record: (A) *timely objects or moves to strike*; and (B) states the specific ground, unless it was apparent from the context[.]

(Emphasis added). In addition, this Court's Rules of Appellate Procedure require that "[i]f the issue was not presented to the lower tribunal, the assignment of error must be phrased in such a fashion as to alert . . . the Supreme Court to the fact that plain error is asserted." *Id*. R. 10(c)(3). Mr. Cain has not asserted plain error in this appeal.

15

the head with a gun." We, therefore, find that Mr. Cain has waived this assignment of error.

We now turn to the State's arguments that Ms. McClellan's statements to Trooper Render that her son, Mr. Cain, had hit her on the head with the butt end of a pistol, and fired a shot in the home, are admissible under hearsay exceptions. The State first contends that Trooper Render's statements fall under the hearsay exception set forth in Rule 803(1), as present sense impression, because it is "a statement describing or explaining an event or condition, made while or immediately after the declarant perceived it[.]" W. Va. R. Evid. 803(1). We disagree. The principle underlying the Rule 803(1) exception is the assumption that statements describing an event and uttered in close temporal proximity to the event, bear a high degree of trustworthiness.[8] *See, e.g., United States v. McElroy*, 587 F.3d 73, 86 (1st Cir. 2009) ("We admit [a statement pursuant to Federal Rule of Evidence Rule 803(1)] because the circumstances under which it was given – immediately after an observation – diminish substantially the opportunity for fabrication"). The official comment to Federal Rule of Evidence 803(1) and (2) explains that the present sense impression exception to the hearsay rule is based on the theory that

---

[8] We note that the West Virginia Rules of Evidence are patterned upon the Federal Rules of Evidence, and this Court has "repeatedly recognized that when codified procedural rules or rules of evidence of West Virginia are patterned after the corresponding federal rules, federal decisions interpreting those rules are persuasive guides in the interpretation of our rules." *State v. Sutphin*, 195 W. Va. 551, 563, 466 S.E.2d 402, 414 (1995).

16

the "substantial contemporaneity of [the] event and statement negate the likelihood of deliberate or conscious misrepresentation." FED. R. EVID. 803(1) & (2) advisory committee's note.

Common sense dictates that Ms. McClellan experienced startling events when Mr. Cain assaulted her and discharged a firearm in the home. *See State v. Thompson*, -- W. Va. --, 927 S.E.2d 885, 897 (2026) (citing cases). The evidence showed she experienced a series of those startling events over the course of several days. We recognize, however, the exception for present sense impression is narrow in scope. "[P]resent sense impressions may be made only while the declarant is actually perceiving the event, or immediately thereafter—a more circumscribed time period than that permitted for excited utterances." *Hallums v. United States*, 841 A.2d 1270, 1277 (D.C. 2004). "In fact, the key difference between the present sense impression exception and the excited utterance exception is that present sense impression requires contemporaneity while the central requirement of an excited utterance is that the declarant still be under the pressure of the exciting event." *State v. Phillips*, 194 W. Va. 569, 577, 461 S.E.2d 75, 83 (1995), *overruled on other grounds by State v. Sutherland*, 231 W. Va. 410, 745 S.E.2d 448 (2013), *overruled on other grounds by State v. Benny W.*, 242 W. Va. 618, 837 S.E.2d 679 (2019); *see also State v. Burroughs*, 492 S.E.2d 408 (Ct. App. S.C. 1997) (holding testimony of nurse and officer regarding victim's statements that were made to them nearly ten hours after sexual assault was not admissible under present sense impression exception to hearsay rule). For this reason, we conclude that Ms. McClellan's statements to Trooper Render at the scene

17

of the crime do not qualify under the present sense impression exception, Rule 803(1), because they lack the requisite temporal proximity to the relevant events.[9]

The State further contends that Trooper Render's statements fall under the hearsay exception set forth in Rule 803(3), "the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition[.]" W. Va. R. Evid. 803(3). This exclusion does not, however, encompass "a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." *Id*. The Supreme Court of North Carolina has stated that the underlying policy supporting Rule 803(3) is the "'fair necessity, for lack of other better evidence, for resorting to a person's own contemporary statements of his mental or physical condition[.]'" *State v. Hardy*, 451 S.E.2d 600, 612 (N.C. 1994) (quoting 6 John H. Wigmore, *Evidence* § 1714 (James H. Chadbourn rev. 1976)).

As discussed above, Trooper Render testified that when he arrived at the scene, he observed that Ms. McClellan was distraught, upset, and crying. Ms. McClellan explained why she was upset, detailing how Mr. Cain assaulted her and hit her on the head with the butt end of a pistol before he fired a shot in the home. The statement of the victim of a crime, related by another person, expressing fear of the defendant, has been held to be

---

[9] Trooper Render testified that after receiving the call to respond to a domestic disturbance, it took between twenty to thirty minutes to make contact with Ms. Vasquez, and then another five minutes to arrive at Mr. Cain's residence.

18

admissible under Rule 803(3) as a statement of existing state of mind. *See State v. Valentine*, 591 S.E.2d 846, 852 (N.C. 2003) (holding statements by victim were admissible under Rule 803(3) to show the declarant's then-existing state of mind because the factual circumstances in the statements "explained the victim's 'upset' and 'concern[ed]' state of mind" and noting "the statements made by the victim to both Parker and Moody related directly to the victim's fear of defendant"). Trooper Render's description of Ms. McClellan's mental condition at the scene of the crime, and any statements she made to that effect, are relevant and fall within this hearsay exception, given that Mr. Cain's sole defense was that Ms. McClellan was in a state of confusion due to injuries, he claimed, were the result of an accidental fall. *See Phillips*, 194 W. Va. at 579, 461 S.E.2d at 85 ("the key factor for this type of statement [under Rule 803(3)] is that the declarant's state of mind is at issue and relevant to the resolution of the case"). However, Rule 803(3) would not allow admission of her statements detailing how "her son had pistol-whipped her and fired a gun in the house and that she needed the police," as those statements go to the cause of her injuries and encompass a statement of memory. "In other words, to prevent the exception from swallowing the rule, Rule 803(3) permits courts to admit out-of-court statements that directly reveal the declarant's state of mind, but excludes the parts of those statements that explain the external circumstances that caused that state of mind." *State v. Gomez*, 460 P.3d 926, 940 (Mt. 2020).

Therefore, we conclude that the circuit court abused its discretion under the facts of this case by permitting Ms. McClellan's out-of-court statements detailing how "her

19

son had pistol-whipped her and fired a gun in the house and that she needed the police" to be admitted into evidence through Trooper Render's testimony. We now turn to whether the error was harmless. "Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.'" *Bruton v. United States*, 391 U.S. 123, 135 (1968) (quoting *Lutwak v. United States*, 344 U.S. 604, 619 (1953)).

This Court has held that

[w]here improper evidence of a nonconstitutional nature is introduced by the State in a criminal trial, the test to determine if the error is harmless is: (1) the inadmissible evidence must be removed from the State's case and a determination made as to whether the remaining evidence is sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt; (2) if the remaining evidence is found to be insufficient, the error is not harmless; (3) if the remaining evidence is sufficient to support the conviction, an analysis must then be made to determine whether the error had any prejudicial effect on the jury.

Syl. pt. 2, *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979).

Consistent with *Atkins*, we must evaluate the strength of the State's evidence on both challenged convictions apart from the evidentiary error. On the issue of whether Mr. Cain committed wanton endangerment by discharging a firearm inside the occupied

20

residence during the time he was committing the crimes against Ms. McClellan, the State presented weak circumstantial evidence: a deputy observed a television in Mr. Cain's living room that appeared to have a bullet hole in it, and a digital forensic analyst extracted images from video cameras located outside Mr. Cain's residence showing him standing on the porch with a handgun. Under the facts of this case, this evidence is not "sufficient to convince impartial minds of the defendant's guilt beyond a reasonable doubt[.]" *Id.* at 514, 261 S.E.2d at 62. So, we cannot regard the error as harmless. Accordingly, we reverse Mr. Cain's conviction of wanton endangerment and remand the case to the circuit court for further proceedings in a manner consistent with this opinion.

However, on the issue of whether Mr. Cain used or presented a firearm during the commission of the felony offense of malicious assault, the State presented sufficient unobjected-to evidence to convince impartial minds of his guilt beyond a reasonable doubt: Ms. Vasquez identified a picture that showed an injury behind Ms. McClellan's ear and stated that the picture showed where "[s]he said he hit her in the head with a gun." Ms. Vasquez confirmed that the photograph accurately depicted what she saw when she arrived on scene, and the photograph was admitted into evidence without objection.

We now turn to the final step in our harmless error analysis and determine whether the error in admitting Trooper Render's testimony "had any prejudicial effect on the jury." *Atkins*, 163 W. Va. at 514, 261 S.E.2d at 62. Under the facts presented here, the error in admitting Trooper Render's testimony did not have any prejudicial effect on the

21

jury, as the same evidence was elicited from Ms. Vasquez without objection. Accordingly, we affirm Mr. Cain's conviction of use or presentment of a firearm during the commission of a felony.

## B. Defense's Offered Jury Instruction

Mr. Cain also argues that the circuit court erred when it refused to include his limiting instruction to the jury regarding out-of-court statements. The State responds that Mr. Cain's offered jury instruction was correctly refused because it was included in the circuit court's standard charge and jury instructions.

During the jury instruction conference, Mr. Cain offered a limiting instruction that would have instructed the jury that "if there were any out of court statements, said by a witness, from a person who later testified, the jury is to ignore those statements as they are inadmissible hearsay. The only testimony you should consider of a named witness is that testimony which they have given at trial." Mr. Cain argued that this instruction was to limit the jury's consideration of Ms. Vasquez's "uncorroborated testimony" that he hit Ms. McClellan in the head with a pistol. When the State pointed out that Trooper Render "testified that he heard the voicemail" message that Ms. McClellan left on Ms. Vasquez's phone, Mr. Cain responded that Trooper Render "was able to testify as to what effect hearing the voicemail had on him. He wasn't allowed to testify as to what

22

was in the voicemail." The circuit court declined to include the defense's instruction in its

jury charge. Rather, it read the following instruction to the jury:

> You are instructed that in considering extra judicial or out-of-court statements, you have the right to take into consideration the circumstances under which they were made, the credibility of the witness or witnesses by whom they are detailed, the condition and circumstances of the party alleged to have made them, and the probability or improbability of such statements, and that you have the right to consider the same in connection with all the evidence in this case.

> In a criminal case out-of-court statements of any nature of the accused are admitted into evidence with caution, and the Court instructs you that it is within your province to consider all the circumstances under which the out-of-court statements were made.

> You are further instructed that you should consider any such out-of-court statements with caution under all the circumstances and that you are at liberty to disregard such out-of-court statements in their entirety or give them such weight as you, the jury, may determine they are entitled to.

> You are further at liberty to judge any such out-of-court statements in a manner similar to your consideration of all the other evidence, and you may attach to such out-of-court statement such weight as you see fit.

> You are the sole judges of the weight and credit to be given to any such out-of-court statements admitted into evidence by this Court.

We have set forth the following standard for reviewing a trial court's refusal

to give requested jury instructions:

> A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

23

Syl. pt. 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994).

Under *Derr*, we first consider whether the requested instruction appropriately reflected the law. While hearsay is generally barred from admission, not every extra-judicial statement constitutes inadmissible hearsay. Considering the varied exceptions to the rule against hearsay, the defense's proposed limiting instruction stating that jurors should "ignore" "any out of court statements, said by a witness," was not a correct statement of the law. *See* Syl. Pt. 2, *Dillon*, 191 W. Va. 648, 447 S.E.2d 583. As the State argued below, the defense was not offering a limiting instruction, but rather an "eliminating instruction," contrary to law. We agree.

As the Supreme Court of Pennsylvania has aptly recognized:

> Facially inadmissible hearsay still may be introduced as substantive evidence for the truth of the matter asserted if the statement falls under one of numerous exceptions to the general hearsay proscription. These exceptions arise from various circumstances that enhance the reliability of the contents of the utterance, and range from business records and ancient texts to statements against interest and dying declarations. The applicability of some of the exceptions depends upon the availability (or unavailability) of the speaker, while others depend upon whether the declarant is subject to cross-examination. When a party invokes one of these exceptions, a court must ascertain whether the proffered statement meets the exacting demands of the exception.

*Commonwealth v. Fitzpatrick*, 255 A.3d 452, 458–59 (Pa. 2021) (quotation marks and citations omitted).

24

Applying these principles to the facts of this case, we conclude that the circuit court did not err when it refused to give the defense's proposed jury instruction because it was not a correct statement of the law. As discussed above, an out-of-court statement of a declarant may be introduced as substantive evidence for the truth of the matter asserted if the statement falls under one of numerous exceptions to the general hearsay rule.

## IV.

## CONCLUSION

For the reasons stated above, we affirm Mr. Cain's conviction of use or presentment of a firearm during the commission of a felony, reverse his conviction of wanton endangerment, and remand the case to the circuit court for further proceedings consistent with this opinion.

Affirmed, in part,

reversed, in part, and remanded.